**Thomas T. Ryan, Appellant, v. Kenneth Monson, Appellee.**

**Gen. No. 48,343.**

First District, Third Division.

December 13, 1961.

407

Sidney S. Altman, of Chicago, for appellant.

■■■

Hubbard, Hubbard & Dorgan, of Chicago, for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

Thomas T. Ryan (hereafter referred to as the plaintiff) brought a suit in the Superior Court of Cook County against Kenneth Monson (hereafter referred to as the defendant) and Joseph Rafferty, who was dismissed out of the suit before trial. The suit was based on injuries suffered by the plaintiff caused by an impact with an automobile driven by the defendant, which occurred at the intersection of Addison and Wilton Streets, in Chicago. Plaintiff fell to the street into the pathway of an automobile driven by Joseph Rafferty, whose car ran over the plaintiff's foot. The jury brought in a verdict for the defendant. The court overruled the post-trial motions of plaintiff and judgment was entered on the verdict. From that judgment the plaintiff now appeals.

■ The plaintiff contends that the verdict was against the manifest weight of the evidence, and that the court erred in his rulings on evidence, in permitting improper remarks of defendant's counsel to be heard by the jury, and in excluding certain testimony during the trial. Plaintiff also alleges that certain instructions were improperly given by the court. The defendant contends that he was not negligent and that the plaintiff's negligence was the sole cause of his injury. In his brief defendant further states: "Plaintiff's injury was minor. He has been paid $1500 by the codefendant. This was full compensation for all his injuries." That question could not be raised in this court and is not properly before us.

■ There is a sharp conflict in the testimony as to whether or not the plaintiff at the time of the accident was in the crosswalk at the intersection of Addison

410

and Wilton Streets. There is no testimony in the record that at the time of the accident the plaintiff was intoxicated, unless that can be inferred from the statement made by the defendant that after the accident the plaintiff was refused a drink in the bar. The issues as to the negligence of the defendant and the due care of the plaintiff properly should have been resolved by the jury. There is nothing in the record before us which would indicate that the finding of the jury in favor of the defendant is against the manifest weight of the evidence; and we could also say that had the jury found in favor of the plaintiff the same rule would be applied. The question which we must resolve is whether under all the circumstances appearing in the record before us the plaintiff had a fair trial.

The trial was conducted in a somewhat unorthodox manner. Originally suit had been brought by the plaintiff against Joseph Rafferty, and the plaintiff took a pretrial deposition of Rafferty. Subsequently the plaintiff amended his pleadings and made Kenneth Monson, the present defendant, a party to the suit. By stipulation between Rafferty and plaintiff, Rafferty was dismissed from the suit. At the time Rafferty paid the plaintiff $1,500. A copy of Rafferty's deposition was sent to the attorney for the present defendant.

During the trial of the case the plaintiff called Rafferty as his witness. After a conference in chambers at which the plaintiff claimed surprise, the court permitted the plaintiff to ask Rafferty as to whether he was asked certain questions and made certain answers in the pretrial deposition. It is a well understood rule of law, as stated in People v. Michaels, 335 Ill 590, 167 NE 857:

> ". . . when a witness unexpectedly gives testimony against the party calling him, such party has

the right to examine him and by such examination show that the witness is giving unexpected testimony, and to specifically call the attention of the witness to former statements made by him for the purpose of refreshing his memory or awakening his conscience and cause him to relent and speak the truth if he was lying. If, however, the witness denies the alleged statements the party calling him must be concluded by his answers, and cannot show, either by the written statements of the witness or by other witnesses, that the witness did, in fact, make those statements, either for the purpose of impeachment or as original evidence of the facts sought to be proved."

See also 37 ILP Witnesses, sec 226.

 Subsequently in the further examination of Rafferty the plaintiff again claimed surprise, and the court refused to permit him the right to again call Rafferty's attention to his former statements. We are unable to understand the reasoning of the court in this particular matter. We know of no rule that surprise can only be claimed once in the examination of the witness. When the defendant started to cross-examine Rafferty the plaintiff objected on the ground that the defendant was going beyond the scope of the direct examination, and the court overruled the objection, stating that if the cross-examination did go beyond the scope of the direct then it would be binding on the defendant. In our opinion the court properly overruled the objection. Counsel for the defendant then read to Rafferty certain statements from the pretrial deposition, and stated that he was attempting to refresh Rafferty's recollection. This was objected to and the court overruled the objection provided he would connect it up. At the time the court treated the matter as an attempt to impeach the witness, but sub-

sequently counsel for the defendant again stated that it was an attempt to refresh the witness' recollection. On cross-examination the rule with reference to refreshing the recollection of a witness does not apply, and the only proper way to attack the witness would be by asking him concerning specific questions and answers which he had made in the pretrial deposition. In case he either did not remember he made the answers or denied that he did make them, the deposition should have been introduced.

■ On cross-examination Rafferty testified that he did not believe that he smelled the plaintiff's breath. Some time later in the cross-examination counsel for defendant, again for the stated purpose of refreshing Rafferty's recollection, read from the deposition a question and answer which indicated that Rafferty did smell alcohol on plaintiff's breath. The plaintiff objected to the question as to whether Rafferty recalled making such statement. The court overruled his objection and no answer to the question was given by Rafferty. Again on the trial Rafferty testified that after the accident the plaintiff asked both Rafferty and defendant to leave, and Rafferty said further: "I wouldn't say that he wanted us to leave so he wouldn't get in trouble." Again for the stated purpose of refreshing the recollection of the witness, counsel for the defendant read from the deposition that Rafferty had said that plaintiff had asked them to go so he would not get into trouble. Rafferty said he could not recall that the plaintiff had made that statement. The deposition was not introduced in evidence, and again the defendant's counsel stated that he was going to read further matters from the deposition for the purpose of refreshing the witness' memory, and in the deposition Rafferty had answered that the bartender had refused to serve the plaintiff, although he requested very strenuously to be served.

■■■■■■

The witness in response to the question as to whether he made such statement said that he was certain that "anything . . . in the deposition is things that I said at times when my memory was fresher than it is now." Again during the cross-examination of Rafferty counsel for the defendant asked the witness whether he was at the present time a party to the lawsuit. Rafferty stated he was not. Counsel for the defendant then asked him as to whether he, Rafferty, had any agreement with the plaintiff in regard to his being dismissed out of the lawsuit. The attorney for the plaintiff said that to save time he would admit that Rafferty was dismissed from the suit. Counsel for the defendant then produced the stipulation dismissing Rafferty and stated that it was his understanding that counsel agreed that the stipulation had been entered into between the plaintiff and Rafferty and that the suit was dismissed as to him. Counsel for plaintiff said that that was true. Counsel for the defendant then asked the following question: "Now, Mr. Rafferty, was there anything said or any discussion then about the time that this was dismissed which was back in—which was filed at least on February 1, 1956, was there any discussion between you and Mr. Altman or Mr. Ryan as to any consideration for a dismissal of the suit against him?" To this question the plaintiff objected. There was a discussion out of chambers, and the court stated that he would not permit evidence to be brought before the jury concerning the amount of the settlement, but that after the jury had returned its verdict the court could properly reduce the amount of the verdict by the amount of the settlement before entering judgment. This rule was laid down in De Lude v. Rimek, 351 Ill App 466 (1st Dist), 115 NE2d 561, and in that case, after a careful analysis and consideration of the Illinois cases which in some instances are in conflict, the court said:

414

"While the amount paid under a covenant not to sue should be deducted from the total damages sustained, we hold it the function of the jury to find the plaintiff's total damages, and the function of the judge, upon application of the defendant after verdict, to find the amount by which such verdict should be reduced by virtue of any covenant made by the plaintiff with another concerned in the commission of the tort."

We feel that this rule is the better and fairer one, and the trial court so ruled. Defendant's reference in his oral argument to this ruling of the trial court will be discussed later.

The investigating officer had arrived at the scene after the occurrence of the accident. When the plaintiff was examining him he asked the officer as to whether he was able to determine the position of the defendant's automobile with reference to the intersection of Addison and Wilton. The defendant objected on the ground that the automobile had been moved before the police officer came to the scene, and the court sustained the objection. Later the defendant testified that the automobile had not been moved when the police officer arrived. There was a material conflict in the evidence with reference to the position of the automobile of the defendant immediately after the occurrence of the accident. Counsel for the defendant could have determined from his client as to whether or not the automobile had been moved. Instead he stated the facts incorrectly, which was the basis of the court's ruling.

While cross-examining the plaintiff the defendant questioned him about Rafferty's testimony, and asked him more than once as to whether he would say that what Rafferty had testified to was true or false. Such a question is improper. In the first place it does

415

not contain the element of the possibility of mistake on the part of the witness and it places the witness in the impossible position of being the judge of the veracity of another witness. Furthermore it has a tendency to prejudice the jury. The defendant then asked the plaintiff as to whether he did not hear Rafferty say that he had smelled liquor on plaintiff's breath. The plaintiff's counsel objected, stating that Rafferty said that he did not smell the breath of the plaintiff. Counsel for the defendant then said that Rafferty had made such a statement. Plaintiff in response to the question said he did not remember Rafferty making any such statement. The record does not show any such statement by Rafferty. The only testimony in the record with reference to Rafferty's smelling liquor on the breath of plaintiff is the statement of counsel for the defendant.

■ The plaintiff called as a witness a Dr. Eichelbaum, and the plaintiff asked the witness if he could state what his examination disclosed both objectively and subjectively. Counsel for the defendant made the following objection: "I will object to any subjective findings on the ground that the examination was made after this lawsuit had been filed and it is my understanding that the law is the exception to the hearsay rule, that the presumption that a person who goes to a doctor for treatment, he will tell the truth, but that will not attain where a person has filed a lawsuit and then goes to the doctor because the presumption that he is telling the truth then does not pertain and there is no such presumption, and I object to this witness testifying to any subjective complaints." The court then asked the doctor if he had treated the witness. The doctor, in answer to the court's question, stated he had treated the plaintiff, and the court then overruled the defendant's objection. Counsel for defendant

is a competent lawyer of wide trial experience, and it is difficult to believe that at the time he made the objection he did not know that the statement he made was not the law. The statement, made in the presence of the jury, was prejudicial and highly objectionable and was not cured by the court's ruling. In Eizerman v. Behn, 9 Ill App2d 263, 287, 132 NE2d 788, 799, we said: ". . . an inflammatory statement accompanying each objection, apparently made solely for the purpose of prejudicing the jury, is improper."

 While counsel for the defendant was examining Dr. Eichelbaum he presented to the witness a document marked as defendant's exhibit No. 5, which apparently was a report made out by an employee of the American Hospital. Counsel started to ask Dr. Eichelbaum a question concerning it. Plaintiff's counsel asked to know what the exhibit was and said that he had a right to know what exhibit counsel was referring to. In response counsel for the defendant stated it was defendant's exhibit 5. The doctor answered that at the time he had not examined it, nor did he check at the hospital for a record of plaintiff's examination. The exhibit was returned to counsel for defendant, and again counsel for plaintiff asked, "Will you tell us what it is, counsel?" Counsel for the defendant did not respond to that question. The exhibit was not introduced in evidence. This was improper. In Cohen v. Weinstein, 231 Ill App 84, 98, where a similar situation developed during the trial, the court says:

"Counsel for appellant should have been fully informed as to what was taking place between his witness and opposing counsel. There should have been no secrecy in the matter. Fairness would seem to require opposing counsel to submit the statement to the witness' counsel after it had been shown to the witness."

417

Standing alone this conduct on the part of counsel for the defendant would not justify a reversal. However, it fits into the pattern of misconduct which runs through the case.

The plaintiff has made objections to certain instructions given at the request of the defendant. The record discloses an extraordinary situation with reference to the instructions. In the record the following appears: "Certification by clerk re: 26 given instructions were filed on October 30, 1959 (marked copies of originals not in Court file) as follows," and following this statement 26 instructions are set out. None of the instructions are marked either "given" or "refused" as is provided by section 67 of the Practice Act. The same section of the Practice Act further provides that an original and a copy of each instruction asked shall be tendered to the court, that the copies should be numbered and should indicate who tendered them, and that both the originals and copies should be filed in the court as part of the proceedings in the cause. Section 68.1 of the Practice Act provides that the post-trial motion must contain the points relied on, particularly specifying the grounds in support thereof, and must state the relief desired. Section 67 further provides that the court should hold a conference with counsel to settle the instructions out of the presence of the jury.

In the case before us such a conference was held and specific objections were made to certain instructions and ruled upon by the court. In his post-trial motion the plaintiff set out verbatim the instructions to which he objected.

Prior to the decisions in Saunders v. Schultz, 20 Ill 2d 301, 170 NE2d 163, and Onderisin v. Elgin, J. & E. Ry. Co., 20 Ill App2d 73, 155 NE2d 338, it was held that the instructions must be identified and specified in the post-trial motion. Krug v. Armour & Co., 335

418

Ill App 222, 80 NE2d 386; Pajak v. Mamsch, 338 Ill App 337, 87 NE2d 147; Rudolph v. City of Chicago, 2 Ill App2d 370, 119 NE2d 528; Dodds v. C. T. A., 9 Ill App2d 388, 132 NE2d 816; Foster v. Union Starch & Refining Co., 11 Ill App2d 346, 137 NE2d 499. In Tabor v. Tazewell Service Co., 18 Ill App2d 593, 153 NE2d 98, the plaintiff in his post-trial motion had objected to certain instructions given by the court. It was contended that the question of the propriety of those instructions was not properly before the reviewing court because the instructions were not sufficiently identified, nor were there any grounds in support of the objections stated, and therefore the post-trial motion failed to meet the requirements of section 68.1 of the Civil Practice Act. The plaintiff in his post-trial motion identified the instructions only by number, and the court says:

"We think the above recitals were sufficient to preserve the alleged error in instructing the jury. The attention of the trial court was thereby directed to certain particular instructions which are referred to by their respective numbers. The obvious purpose behind the enactment of Sec. 68.1 is to require the party seeking a new trial to indicate with sufficient particularity in his motion the grounds relied upon thus affording the trial court an opportunity to correct its error. While a post-trial motion must specify the errors relied upon, it need not be a brief or argument."

In Saunders v. Schultz, supra, at 314, the court says:

"With reference to the propriety of the instructions submitted by the trial court, the criterion reiterated in the case law has been whether the jury was fairly, fully and comprehensively informed on the relevant principles, considering the

419

instructions in their entirety. From the record it appears that this criterion has been met. Furthermore, as noted by the Appellate Court, since defendant did not assert the grounds now urged against the particular instructions at the instruction conference, his objections thereto are not well taken when interposed for the first time on review. Onderisin v. Elgin, Joliet and Eastern Railway Co., 20 Ill App2d 73, 77–78."

In Rubinstein v. Fred A. Coleman Co., 22 Ill App2d 116, 159 NE2d 379, the court says:

"We have held that a party will not be heard to complain of alleged errors in instructions where such errors were not called to the trial court's attention by specific objections made either at the conference on instructions or in a post-trial motion. Arboit v. Gateway Transportation Co., 15 Ill App2d 500, 512, 146 NE2d 582; Onderisin v. Elgin, J. & E. Ry. Co., 20 Ill App2d 73, 77, 155 NE2d 338. Since plaintiffs' abstract wholly fails to show whether or not they made specific objections to any of defendants' instructions at the conference and their post-trial motion contains no specific objections to such instructions, we consider that plaintiffs' objections to instructions given for defendants are not properly presented or preserved for review."

It then becomes necessary for this court to determine whether it can identify the instructions certified in the abstract to have been given, with the instructions referred to in the post-trial motion and the instructions to which specific objections were made at the instruction conference. Certain of the instructions can be so identified, and it also can be determined on whose behalf the instructions were offered. In People

v. Hubbard, 355 Ill 196, 189 NE 23, the Supreme Court says: "None of the instructions are identified by number or letter in the abstract of record, by reason of which we have been needlessly compelled to hunt through pages of the abstract to find the instructions complained of. Instructions should always be identified in the record, as well as in the abstract, by number or letter." Nevertheless, the court did search out the instructions and pass upon them.

 From an examination of the discussion during the conference in chambers it is apparent the instructions referred to as 20 and 21 were given on behalf of the defendant and over the specific and detailed objections of the plaintiff. Defendant's instruction 20 was as follows:

"The jury is instructed that there was in full force and effect in the City of Chicago upon the date of the occurrence in question the following ordinance:

" '27–102. (a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.'

"The jury is further instructed that if you believe from the evidence that the plaintiff violated said ordinance, and if you further believe such violation, if any, constituted negligence, and if you further believe such negligence, if any, proximately contributed to cause the accident in question, then you are instructed that the plaintiff cannot recover in this proceeding."

The instruction was improper because it did not include the further provision of ordinance section 27–106, which provides: "Notwithstanding the foregoing provisions of this chapter every driver of a vehicle

421

shall exercise due care to avoid colliding with any pedestrian upon any roadway . . . ." Where an instruction is peremptory it must inform the jury of every material question of fact in controversy, and where the courts of review have placed a modified construction upon a statute the instruction should be framed according to that construction so as to properly inform the jury of its legal effect. See De Legge v. Karlsen, 17 Ill App2d 69, 78, 149 NE2d 491, 495, where the court further says, quoting from Anderson v. Middleton, 350 Ill App 59, 63, 111 NE2d 904, 905–6: " 'It has been held consistently that a right of way is not an absolute right and it cannot be asserted regardless of circumstances, distance, or speed.' "

In Reese v. Buhle, 16 Ill App2d 13, 147 NE2d 431, the judgment of the trial court was reversed because of the refusal of the trial court to give an instruction relating to the right of way. It is just as important that the jury should be properly instructed when it is disputed as to whether or not the plaintiff was crossing in the designated crosswalk.

In Tuttle v. Checker Taxi Co., 274 Ill App 525, the court upheld the trial court's order sustaining plaintiff's motion for a new trial because of an error in an instruction. The court says in its opinion that the record shows that the trial court granted a new trial because he was of the opinion that the defendants' instruction given to the jury was prejudicially erroneous. The trial court in that case instructed the jury, after setting out the ordinance which is generally the same as the statute and ordinance in the case before us, as follows:

"You are further instructed that if you believe from a preponderance of the evidence, under the instructions of the court, that the plaintiff at the time of receiving the injuries herein complained

422

of was crossing the roadway on State street at a place other than a crosswalk and that the taxicab of the defendants was then approaching the plaintiff and had not come to a stop and that she, the plaintiff, did not yield the right of way to defendant's automobile, and that as a direct and proximate result thereof she was injured, then you should find the defendants not guilty."

The court says:

"The instruction is also objectionable in that it in effect tells the jury that if plaintiff did not yield the right of way to defendants' cab and because of this was injured, she could not recover. It ignores the rule that both pedestrians and drivers of automobiles on the public streets are required by law to use care to avoid accidents. Drivers of automobiles on the streets must use ordinary care for the safety of pedestrians. . . .

"The instruction was also erroneous in that it did not tell the jury under what circumstances the automobile had the right of way. There might be a number of circumstances, such as the speed of the automobile, the gait at which plaintiff was walking, her distance away from the automobile at the time she was attempting to cross the roadway, which would determine the right of the vehicle to proceed.

". . .

"The instruction directed a verdict, and errors it contains are not cured by other instructions."

In Parkin v. Rigdon, 1 Ill App2d 586, 118 NE2d 342, a similar instruction was given, referring to the Illinois statute. The court points out that the instruction, while correctly quoting the statute, omitted the provision requiring the driver to exercise due care and to

give warning by sounding his horn when necessary. The court reversed the trial court and cites in support of its ruling Tuttle v. Checker Taxi Co., supra, and Breitmeier v. Sutera, 327 Ill App 221, 63 NE2d 667. The Breitmeier case in turn cites Moran v. Gatz, 390 Ill 478, 62 NE2d 443. Also see Walker v. Shea-Matson Trucking Co., 344 Ill App 466, 101 NE2d 449.

The court also gave instruction 21, which instruction is based on the Illinois statute which provides: "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway." (Ill Rev Stats 1953, c 95½, § 172.) That instruction did not include a provision of the statute which required the driver to exercise due care to avoid colliding with any pedestrian upon any roadway and give warning by sounding his horn when necessary. The ordinance and the statute use practically the same language. Another objection to the giving of instructions 20 and 21 is that they are repetitious. A rule of law once clearly stated to the jury is enough and should not be repeated. Nor should the court give instructions which lay undue stress upon particular matters. 35 ILP Trial, secs 193, 199.

Other objections are made by the plaintiff to statements made by defendant's counsel in his closing argument to the jury. We will only mention a few of such statements. He said: "Now, they put on Mr. Rafferty, the man whom Mr. Ryan sued and whom he charged with all of the things that he is charging us with, and yet in 1956 they dismissed him out of the lawsuit. Now, whether there was some agreement between them or what, we don't know. The objection was sustained to that, and that's something that you haven't heard. But I think it would be very important if we knew what that—what happened, anyway." It is

utterly improper for counsel in arguing to the jury to refer to the ruling of the trial court rejecting evidence, and this is true whether the ruling of the trial court was or was not in error. In Forest Preserve Dist. v. Alton R. Co., 391 Ill 230, 62 NE2d 701, the court said:

> "In arguing a case to a jury, counsel are privileged to discuss the evidence introduced and all reasonable inferences that may be drawn therefrom, but they should not undertake to create a prejudice against the opposing party by arguing that if evidence which the court has held inadmissible had been admitted, it would have been adverse to the opposing party. Such conduct is beyond the scope of proper argument. . . . [Cases cited.]"

Again in his argument counsel reiterated his erroneous statement that Rafferty had said that he smelled liquor on the breath of the plaintiff.

Counsel's comment on the fact that the plaintiff did not call to the stand the owner of the tavern in which the plaintiff had been is also improper, as well as his savage attack on the integrity of Dr. Eichelbaum. To go any further into the various objectionable remarks made by the defendant's counsel would unduly prolong this opinion.

It is true that no objection was made by plaintiff to the statements made by defendant's counsel. In Belfield v. Coop, 8 Ill2d 293, 134 NE2d 249, the court discusses alleged prejudicial conduct of plaintiffs' counsel in making statements in his argument to the jury, to which statements no objections were made. The court says:

> "The rule generally adopted is that such assignments of error will not be considered on appeal unless objection to the alleged prejudicial argu-

ment has been made in the trial court, a ruling of the court obtained and the record showing the objection and the ruling preserved. (Gaddie v. Whittaker, 344 Ill 149; North Chicago Street Railway Co. v. Cotton, 140 Ill 486.) Although that may be the general rule and may suffice to secure justice in a majority of cases, some of the remarks of counsel in the argument in this case were so highly prejudicial as to be worthy of our comment and censure. . . .

"So much of this argument was prejudicial and unwarranted that a duty devolved upon the court to inject itself into the proceedings sufficiently to see that the litigants received a fair trial. It is always the duty of a trial court to control the proceedings to the extent necessary to insure this result. This court has said that in discharging this duty it is not always enough that the court sustain objections, but in a proper case it should act promptly to stop misconduct. (Bishop v. Chicago Junction Railway Co., 289 Ill 63.) In a clear case this court will reverse a judgment because of improper conduct and prejudicial statements of counsel even though the trial court has sustained objections thereto, rebuked counsel, and directed the jury to disregard such statement. (Appel v. Chicago City Railway Co., 259 Ill 561.) If the argument of counsel is seriously prejudicial, a court should, of its own motion, stop the argument and direct the jury not to consider it. (McWilliams v. Sentinel Publishing Co., 339 Ill App 83; Rudolph v. City of Chicago, 2 Ill App2d 370.) If prejudicial arguments are made without objection of counsel or interference of the trial court to the extent that the parties litigant cannot receive a fair trial and the judicial process stand without deterioration, then upon review this court may consider such

assignments of error, even though no objection was made and no ruling made or preserved thereon."

Also see Crutchfield v. Meyer, 414 Ill 210, 111 NE2d 142. In our opnion the argument of counsel for defendant was seriously prejudicial. In Eizerman v. Behn, supra, we said:

"A trial properly conducted is a dignified procedure. Counsel in the case are officers of the court and owe a duty to the court, to opposing counsel, to the cause of justice and to themselves. Often in the heat and fervor of a sharply contested trial these standards are forgotten. Too often they are not only forgotten but completely disregarded and dragged in the mire."

In this case the plaintiff made a motion that the court assess expenses and attorney's fees against defendant because the defendant, in response to an interrogatory of the plaintiff asking for the names of persons having knowledge of relevant facts relating to the lawsuit, had given a long list of names of persons, the majority of whom had no knowledge of the accident whatsoever or could not be located by the plaintiff at the address given. He also made a motion to assess attorney's fees and expenses for improperly issuing deposition notices requiring the attendance of counsel, which depositions were summarily canceled. These motions were denied by the trial court. There is nothing in the record showing the grounds upon which the trial court acted, except the court's statement that he did not think that a trial judge should be passing on motions of this type. If that was, as it appears to have been, the ground on which the court acted, the ruling was improper and the court should have passed upon the motions on their merits.

The judgment of the Superior Court of Cook County is reversed and the cause remanded for a new trial.

Reversed and remanded.

DEMPSEY and SCHWARTZ, JJ., concur.