Donna M. KIEFEL, Plaintiff,

v.

LAS VEGAS HACIENDA, INC., a California corporation, Defendant.

No. 63 C 1982.

United States District Court
N. D. Illinois, E. D.

Feb. 28, 1966.

Westbrook, Jacobson & Brandvik, Chicago, Ill., for plaintiff.

Hubbard, Hubbard, O'Brien & Hall, Chicago, Ill., for defendant.

ROBSON, District Judge.

Plaintiff moves for a new trial and seeks to have the verdict and judgment thereon against her set aside. Several grounds are advanced. The court concludes that one of those grounds is sufficient basis for the granting of a new trial.

The court is of the opinion that plaintiff has not had a fair trial due to the objectionable trial strategy of defendant's counsel. In substance, those tactics consisted of knowingly making prejudicial insinuations in his opening statement which were not substantiated by evidence. Further, he hamstrung plaintiff's counsel in precluding the appearance of an out-of-town court reporter to testify in respect to an important deposition which had not been filed, in violation of the rules of court. Other less important conduct occurred in the course of the trial, which alone might not warrant the granting of a new trial, but viewed cumulatively, in conjunction with the aforestated acts, are more than sufficient to make the court conclude that the plaintiff was not accorded a fair chance to present the facts of her case to the jury.

Plaintiff sued in a two-count complaint for damages from an assault in her room in defendant's motel. The first count was in tort and the second in contract. There is no question that the assault occurred and that very serious skull and other injuries were inflicted. The critical questions were: (1) Who inflicted the injuries, her husband or an intruder. (2) If an intruder, did he gain entrance through plaintiff's contributory negligence by virtue of an unlatched door, or plaintiff's negligence due to intoxication, or other circumstance. (3) Did the assault proximately result from defendant's negligence in failing to provide an adequate lock on the door or in not maintaining sufficient security guard in the corridor.

Very snide insinuations were made by defendant's counsel that plaintiff and her husband had had an altercation the previous evening. Counsel indicated he would prove it by the husband's statements to the switchboard operator when he repeatedly, vainly tried to reach his wife in their room in the early hours. Defendant's counsel similarly intimated by cross examination, along the same line, which questioning would be followed by impeachment, but no impeachment on the subject ever occurred.

The court grants this motion for a new trial solely from its own observation of defense counsel's tactics, irrespective of the citation of similar action by the Illinois courts occasioned by the same counsel's conduct in the same regard (Ryan v. Monson, 33 Ill.App.2d 406, 179 N.E.2d 449 (1961); Cline v. Kirchwehm Bros. Cartage Co., Inc., 42 Ill.App.2d 85, 191 N.E.2d 410 (1963). The decisions do, however, furnish corroboration that his acts were not mere happenstance, inadvertently and unintentionally occurring. In contrast, the court notes the strenuous and futile efforts of plaintiff's counsel to combat the insidious effect re-

sulting from the artfully planted statements of defense counsel.

There is an extended discussion of the granting of motions for a new trial in Lind v. Schenley Industries, Inc., 278 F.2d 79 (3rd Cir. 1960). It is there said, at 90:

> "* * * New trials granted because (1) a jury verdict is against the weight of the evidence may be sharply distinguished from (2) new trials ordered for other reasons: for example, evidence improperly admitted, *prejudicial statements by counsel* * * *. In the first instance given it is the jury itself which fails properly to perform the functions confided to it by law. In the latter instances something occurred in the course of the trial which resulted or which may have resulted in the jury receiving a distorted, incorrect, or an incomplete view of the operative facts, or some undesirable element obtruded itself into the proceedings creating a condition whereby the giving of a just verdict was rendered difficult or impossible. In the latter instances, * * * the trial court delivered the jury from a possibly erroneous verdict arising from circumstances over which the jury had no control. Under these conditions there is no usurpation by the court of the prime function of the jury as the trier of the facts and the trial judge necessarily must be allowed wide discretion in granting or refusing a new trial." (Emphasis added).

The rule of law is stated in 39 American Jurisprudence, New Trial § 53, thus:

> "Misconduct of counsel for one party, if of such a nature as to influence a verdict in favor of that party, or to prevent the adverse party from having a fair trial is * * * ground for a new trial. * * *
>
> "* * * In order to warrant the granting of a new trial, the objectionable conduct must appear to have been prejudicial to the interest of the complaining party. * * *"

Section 54, *ibid:*

> "Improper remarks and comments of counsel for a party, made in the presence and hearing of the jury, if of such character as to influence a verdict, prevent a fair trial * * * and * * * furnish good grounds for a new trial. * * *
>
> "As the right to a new trial may be founded upon counsel's misstatements of facts, or his statements of facts which have not been introduced in, or established by, evidence, frequently a new trial is sought and obtained upon the ground that counsel has made statements or arguments appealing to the emotions and prejudices of the jury."

Section 55, *ibid:*

> "The courts recognize the fact that proof frequently fails to come up to expectation, and the tendency is to permit counsel a reasonable latitude in stating to the jury the facts proposed to be shown, and when no substantial prejudice results * * * a new trial will not be required merely because of reference by counsel, in a civil case at least, in his opening statement to matters which he subsequently makes no attempt to prove. *The rule is different, however, where it is clear that prejudice resulted to the opposing side from the remarks of counsel in his opening statement, which was not cured by the action of the court.* * * *" (Emphasis added).

Also in point are the numerous decisions and texts cited by plaintiff: Cleary, Handbook of Illinois Evidence § 9.11, p. 144; Schoolfield v. Witkowski, 54 Ill.App. 2d 111, 203 N.E.2d 460 (1964); Gordon v. Checker Taxi Co., 334 Ill.App. 313, 79 N.E.2d 632 (1948); Miller v. Chicago Transit Authority, 3 Ill.App.2d 223, 121 N.E.2d 348 (1954); Marut v. Costello, 53 Ill.App.2d 340, 202 N.E.2d 853 (1964);

118 A.L.R. 543; Duff v. Ewing, 60 Ill. App.2d 382, 208 N.E.2d 320 (1965).

The court does not agree that there "was nothing in the opening statement calculated to enflame the jury." Statements in respect to a husband-wife rift could have had great weight in the jury's decision as to whether the husband was the culprit in the assault.

The parts of the opening argument of counsel for the defense, which plaintiff cites as unsupported by subsequently presented evidence, are

"The evidence will show that *the facts* concerning this unfortunate event *are within the knowledge of the plaintiff and her husband, and no one else* that we know of." (R. 5)

\* \* \* \* \* \*

"The evidence will show that during that evening that the husband was making repeated telephone calls to this room, and that *the husband told the telephone operator that he and his wife had had a fight*, and that she wouldn't let him in the room." (R. 6)

\* \* \* \* \* \*

"Now the room itself, when a person enters the room after you enter the door, to the right is the bathroom, and when the bathroom light is on and the door open, that *light is a strong light* and it shines in the face of anyone that comes in the door, so any person that was looking could see and *recognize such person.*

"The evidence will show that outside the door, and immediately above where the two doors are there is another light, and it was a bright one, so that anyone opening the door, this light would shine on that person, so *even though a person were lying in bed they could see that person as to who that person was*.

"I believe the evidence will show that the plaintiff stated after she had been in bed and had probably gone to sleep, that she looked up and she saw a man who she says was coming through the door, that she said 'Carl,' or something to that effect. She made no outcry whatsoever. \* \* \*

" \* \* \* The evidence will show that she made no outcry." (R. 7–8) (Emphasis added.)

Plaintiff testified she did not recall a bright light shining outside the door, and that the hall seemed quite dark as she walked down it.

On cross-examination, plaintiff was asked if she had any differences of opinion with her husband and she answered no. When reminded that she left, "and alone," she replied she was tired and left to go to bed.

She stated again the light was dim by her door; that it was not real bright. The bathroom door was not wide open. The light from the corridor did not shine on the man. She called out her husband's name, "Carl." She was asked if she called "because you recognized the person you saw, did you not?" She answered, "I did not recognize him."

Mr. Kiefel when asked if he made a telephone call to his room from 2:00 a.m. to 7:00 a. m. said that he did not make one single telephone call. He was then asked: "Isn't it a fact that you began telephoning at 2:00 o'clock and continued telephoning until 7:00?" When an objection was sustained, counsel stated he was asking the question to lay the foundation for impeachment. Mr. Kiefel answered: "It is not." Then followed the question, "Did you, during that period, make between 12 and 14 telephone calls to your room?" The answer again was "I did not. \* \* \* I didn't make any telephone calls during that period. Only at 6:30 when I went back to the room after playing blackjack when I telephoned my wife."

The court has reviewed the testimony of Sharon Hamlin, the nurse on duty in the hospital where plaintiff was taken after the occurrence. There are manifest

inconsistencies between her statements, deposition, testimony and hospital records as to the state of consciousness of plaintiff at a time when plaintiff was questioned in the hospital. There are plain indications of the witness's hostility to personal injury suits. She had signed her deposition, she states, which deposition she brought with her to Chicago and left it at defendant's counsel's office, yet that deposition was never filed with the Clerk of the Court. Further, the indications are that counsel manipulated matters so that the court reporter who took the depositions or statements would not be available to appear at this trial to verify from her notes the actual interrogation and answers which took place. At plaintiff's counsel's request, she had agreed to appear here and had purchased her ticket, and at the last moment reneged on the ground that she could not be released from a deposition scheduled for the next day by an attorney who had on occasion represented the insurer of defendant, and in whose offices the critical deposition was taken. Plaintiff's counsel asked that attorney to reschedule the deposition but he refused. Defendant counsel's associate had retained that same Las Vegas attorney to represent defendant in another deposition taken in this cause. It is therefore evident that improper pressure could have been brought to bear to preclude the release of the court reporter from the scheduled deposition in order to prevent her appearance as a witness in the case.

As plaintiff points out, the Canons of Professional Ethics proscribe argument asserting as a fact something which had not been proved, or the introduction of statements into argument with intent to influence a jury (Canon No. 22).

The court is convinced that because of the unprofessional tactics of Reese Hubbard, counsel for defendant, the plaintiff did not have a fair trial. Counsel for defendant is a lawyer who has had long and extensive trial experience. These years in the court should have taught him compassion and a sense of fair play. Instead, he seeks to use his experience to assert and apply every sly trick and stratagem to win his case. He does this with the hope that he can stay within the bounds of professional ethics. In this instance, he has far overstepped the bounds. This court finds that his trial tactics were such that the jury might or could have been influenced by his unfair actions and as a result found for the defendant.

The motion for new trial is granted.