Donna M. KIEFEL, Plaintiff-Appellee,

v.

LAS VEGAS HACIENDA, INC., a California corporation, Defendant-Appellant,

Reese Hubbard, Respondent-Appellant.

Donna M. KIEFEL, Plaintiff-Appellee,

v.

LAS VEGAS HACIENDA, INC., Defendant-Appellant.

Nos. 15933, 15976, 16210.

United States Court of Appeals Seventh Circuit.

Nov. 15, 1968.

As Amended Dec. 31, 1968.

Rehearing Denied Jan. 6, 1969.

Peter Fitzpatrick, Alvin G. Hubbard, Frederick W. Temple, George Kaye, Chicago, Ill., for appellant, Reese Hubbard.

James A. Brandvik, Lowell H. Jacobson, Westbrook, Jacobson & Brandvik, Chicago, Ill., for plaintiff-appellee, James A. Brandvik, Lowell H. Jacobson, Chicago, Ill., of counsel.

Before HASTINGS, FAIRCHILD and KERNER, Circuit Judges.

KERNER, Circuit Judge.

These cases come before this court on appeals from two separate trials in the district court and an appeal from an or-

der assessing costs and attorneys' fees in the first of the two trials.

Plaintiff-appellee Kiefel and her husband* purchased a package air travel and hotel plan to Las Vegas in February, 1962. They were lodged in Room 315 of the Las Vegas Hacienda. On the evening and morning of February 28–March 1, 1962, plaintiff and her husband visited three night club shows and consumed several drinks. Returning to their hotel, another drink was had at the bar and plaintiff went off to their room to bed, while her husband remained in the casino stating he remained there until 6:30 a. m. Sometime before 5:20 a. m. someone entered Room 315 and attacked plaintiff, striking her on the head with a bottle of champagne, fracturing her skull and causing severe facial lacerations.

The complaint and amended complaint are founded in contract and tort for failure of defendant, Las Vegas Hacienda, to provide a reasonably safe sleeping room accommodation resulting in the personal injuries to plaintiff.

### Case No. 15933

The first trial was heard by the Honorable Edwin A. Robson. After the jury returned a verdict for the defendant, plaintiff filed a motion for a new trial based on defense counsel respondent-appellant Reese Hubbard's alleged acts of misconduct. The court granted the motion and filed an opinion, Kiefel v. Las Vegas Hacienda, Inc., 39 F.R.D. 592 (N.D.Ill.1966). The question presented by this appeal is whether the acts of misconduct were such as to require a new trial.

Plaintiff-appellee cited in her brief on appeal no less than ten items of misconduct involving the first trial and the pre-trial discovery as well as six additional items of misconduct at the second trial. With respect to the first trial, Judge Robson's opinion relied on two of the ten items of misconduct as individually requiring a new trial and further found that the remaining misconduct, when "viewed cumulatively, in conjunc-

---

* Divorced shortly after the first trial.

tion with the aforestated acts, are more than sufficient to make the court conclude that the plaintiff was not accorded a fair chance to present the facts of her case to the jury." 39 F.R.D. at 593.

The first of the specific acts was the inclusion of statements in Hubbard's opening remarks to the jury which the court found to be capable of inflaming the jury, 39 F.R.D. at 595. The second of the acts was the failure to file a deposition in the case together with causing the reporter who took the deposition to be unavailable as a witness at the trial. 39 F.R.D. at 596.

The motion for a new trial asserted other misconduct including 1) making assertions of facts not proved, 2) attempting to improperly influence the jury by the introduction of statements into argument on matters not in evidence under the pretext of laying a foundation for impeachment which were never offered, 3) examining witnesses on an exhibit which was never offered in evidence, 4) repeatedly making known meritless objections both in the trial and pretrial phases of the case for the purpose of harassment, 5) falsely stating to the court that he did not have a deposition which he apparently had under his control and probably was in his own office, and 6) objecting to the introduction of a deposition on the ground that he did not authorize it when it was taken under order of court entered after an agreement made by his co-counsel. In response to some of these acts, the court noted, 39 F.R.D. at 596:

> As plaintiff points out, the Canons of Professional Ethics proscribe argument asserting as a fact something which had not been proved, or the introduction of statements into argument with intent to influence a jury (Canon No. 22).

▮ Whether on the basis of the two specific acts discussed by the court or the other acts viewed cumulatively, it is clear that Judge Robson was correct in granting the motion for a new trial. The legal authority set out in Judge Robson's opin-

ion is sufficient to support his determination. 39 F.R.D. at 594–595. In addition to that authority, we rely on Mangan v. Broderick & Bascom Rope Co., 351 F.2d 24, 29, 31 (7th Cir. 1965), Ryan v. Monson, 33 Ill.App.2d 406, 412–413, 415–417, 424 and 427–428 (1st Dist. 1961), and Cline v. Kirchwehm Bros. Cartage Co., Inc., 42 Ill.App.2d 85, 191 N.E.2d 410 (1963), all cases in which new trials were ordered due to improper trial tactics and unprofessional conduct on the part of the present respondent. We find that Judge Robson was correct in holding, 39 F.R.D. at 596:

> The court is convinced that because of the unprofessional tactics of Reese Hubbard, counsel for defendant, the plaintiff did not have a fair trial. Counsel for defendant is a lawyer who has had long and extensive trial experience. These years in the court should have taught him compassion and a sense of fair play. Instead, he seeks to use his experience to assert and apply every sly trick and strategem to win his case. He does this with the hope that he can stay within the bounds of professional ethics. In this instance, he has far overstepped the bounds. This court finds that his trial tactics were such that the jury might or could have been influenced by his unfair actions and as a result found for the defendant.

> The motion for new trial is granted.

Accordingly, we affirm the decision of the district court granting plaintiff-appellee's motion for a new trial.

Affirmed.

## Case No. 15976

After the conclusion of the trial before Judge Robson, the plaintiff filed a motion to assess costs and attorneys' fees against defendant Las Vegas Hacienda, Inc., and Reese Hubbard jointly and severally. The court entered a judgment order against defendant and counsel in the sum of Eight Thousand One Hundred Seventy-one Dollars and Fifty-six Cents ($8,171.56) consisting of Six Thousand

One Hundred Dollars ($6,100.00) in attorneys' fees and Two Thousand Seventy- one Dollars and Fifty-six Cents ($2,071.-56) as costs, and itemized as follows:

*Attorneys' fees:*

(a) James A. Brandvik, the sum of— for the trial of this cause; — $2,000.00

(b) Lowell H. Jacobson, the sum of— for the trial of this cause; — 3,000.00

(c) James A. Brandvik and Lowell H. Jacobson, for services in connection with the post-trial motion— 1,000.00

(d) James A. Brandvik, attorney's fees in connection with the Las Vegas deposition of Sharon Hamlin— 100.00

Total Attorneys' Fees ....................... $6,100.00

*Costs:*

(a) Claude Youker, reporter's bills— $ 947.15

(b) Graham & Associates, for service of summons on expert witnesses, mileage and advancement of witness fees— 101.80

(c) Court Reporter Stella Butterfield for copy of Sharon Hamlin deposition not previously filed— 17.25

(d) Expert witness fees for plaintiff's experts as follows:
  1. Dr. Textor $ 75.00
  2. Dr. Halstead 250.00
  3. Dr. Cutler 150.00
  4. Locksmith James Busch 200.00 — 675.00

(e) Air fare to Las Vegas and return regarding deposition of Sharon Hamlin— 230.36

(f) Meals and lodging incurred by Attorney James A. Brandvik in connection with deposition— 100.00

Total Costs ................................. $2,071.56

———◆———

From this order defendant-appellant and respondent-appellant appeal.

The authority for assessment of costs is set forth in 28 U.S.C. §§ 1920, 1921, 1923 and 1927. The specific items taxable as costs are limited by the express language of the statute. Farmer v. Arabian American Oil Co., 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964); Braun v. Hassenstein Steel Co., 23 F.R.D. 163 (D.S.D.1959) and Federal Rules of Civil Procedure, Rule 54(d). 28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs.

This section of 28 U.S.C. relieves Las Vegas Hacienda of any responsibility for costs assessed by the trial court, and any costs assessed are taxable to Reese Hubbard personally.

While it is relatively unusual for a decision to be reversed due to prejudice injected into the trial by an attorney, or to require a new trial therefor, it is uncommon to assess costs on the attorney involved. This is a power which the courts should exercise only in instances of a serious and studied disregard for the orderly processes of justice. In the language of the statute, it is a power which is exercisable only where the effect of the attorney's conduct is such as "unreasonably and vexatiously" increases the costs. The attorney's conduct, described previously, is clearly within these restrictive standards. His acts of misconduct were correctly found to be intentional, involving serious breaches of the Canons of Ethics. In view of Judge Robson's finding of Hubbard's "long and extensive trial experience," we also deem it appropriate to consider Hubbard's conduct in past cases.

Counsel Reese Hubbard's history of past misconduct is well documented in the prior opinions of this court. The first occasion we had to consider his conduct was in O'Shea v. Jewel Tea Co., 233 F.2d 530 (7th Cir. 1956). In the trial of that case, Reese Hubbard offered to produce a witness for the defense who could testify as to whether another witness was not blind; a fact which, if shown, would have permitted a defense exhibit to be introduced into evidence. The witness was not produced and, on appeal, the defense urged that the failure to admit the exhibit was error. In discussing that issue, the court held, 233 F.2d at 533:

> If counsel for the defendant had witnesses to prove such facts he should have, in fairness to the trial court, introduced their testimony as part of his defense.

The court then also observed that certain statements of the trial judge to which exception was taken on appeal by defendant were, in part, "entirely justified by the actions of defense counsel * * *." 233 F.2d at 535.

In Quality Molding Co. v. American Nat'l Fire Ins. Co., 287 F.2d 313 (7th Cir. 1961), Reese Hubbard on behalf of the plaintiff, seriously misquoted an importnant precedent both in the trial court and in the brief filed in this court. After showing the nature of the misquote, the court held, 287 F.2d at 316:

> We would much prefer to think the omission of the all important words was inadvertent. However, counsel for defendants states the same omission was made in the District Court, and the misquotation was specifically called to the attention of plaintiff's counsel in the trial brief which was filed by defendants.
>
> A sloppy mistake in a quotation might be at least understandable on the part of a careless attorney. But, a deliberate misquotation calls for a strong condemnation. However, we do not initiate disciplinary action in this Court because there is a bare possibility that the fact that counsel's quotation was not correct might not have come to the personal attention of the attorney preparing the brief in this Court.
>
> Attorneys whose names are affixed to briefs filed in this Court have a heavy responsibility to see to it that quotations from the opinions of other courts as well as other statements therein are completely accurate.

Because of the serious consequences which may result from that type of misconduct, this court was most reluctant to find that the misquote was intentional.

However, the circumstances surrounding the misconduct in Mangan v. Broderick & Bascom Rope Co., 351 F.2d 24 (7th Cir. 1965), left no doubt that this later misconduct was intentional. After objections were sustained to questions offered by Reese Hubbard and his offer of proof for the defense was denied, he persisted in asking a question which improperly injected the issues of workmen's compensation and insurance into the trial. This court described the circumstances and held that the misconduct

would justify a new trial for the plaintiff, 351 F.2d at 29:

> * * * Subsequently, in his examination of one of the treating physicians, counsel asked the physician who had paid plaintiff's bill and elicited the answer that the insurance company had done so. The question and answer were stricken. Though the court chastised counsel for his *deliberate disobedience to the court's prior admonition,* plaintiff's motion for a mistrial was denied.
>
> * * * * * *

In this case, the conduct of defendant's counsel in his cross-examination of Schweitzer's office manager, the doctor and Borchardt *in defiance of the court's admonition* was an act not to be condoned. The motive for such questioning could not have been entirely an attempt to show possible bias of the witnesses. The doctor was not a Schweitzer employee. He could have no possible interest in the case. Borchardt was not a Schweitzer employee as we shall presently show. Thus, even if the judge was correct in his ultimate ruling that evidence of the receipt of workmen's compensation might be adduced to show the possible bias of witnesses, we are still faced here with gross error. *Counsel's willingness to inject that evidence into the case at any cost is sufficient to earn him a new trial for plaintiff.* [Emphasis added.]

This court also warned that other intentional misconduct on his part should not be repeated, 351 F.2d at 31:

> Finally, the conduct of defendant's counsel in cross-examining a witness upon an exhibit which was not in evidence and which was never offered in evidence was such a *deliberate misuse of the judicial process* that it must not be repeated upon a retrial of this suit. [Emphasis added.]

In Neusus v. Sponholtz, 369 F.2d 259 (7th Cir. 1966), Reese Hubbard again engaged in prejudicial cross-examination. The court called attention to the misconduct, 369 F.2d at 260–261, fn. 2:

Although we do not reach these questions, the objectionable trial tactics of defense counsel for American, Reese Hubbard, should not escape comment. His conduct was very unprofessional in several instances, particularly with respect to his method of cross-examination by unsupported innuendo, and were it not for our resolution of the principle issue a new trial would have to be granted to the plaintiff. * * *

* * * * * *

> *The cross-examination tactic of attorney Hubbard is particularly objectionable in this case because it appears to have been undertaken deliberately and with complete disregard of the consequences.* The same counsel has been criticized on a number of occasions for the same tactic and other tactics which are questionable from the standpoint of professional ethics. * * * [Emphasis added.]

The court then cited its earlier opinions on point and the decision of Judge Robson in the first trial of the case now before us.

Respondent Hubbard's unprofessional conduct has also been criticized by the Illinois Supreme and Appellate Courts in opinions entered after our criticism in Quality Molding. In Ryan v. Monson, 33 Ill.App.2d 406, 179 N.E.2d 449 (1st Dist. 1961), the court reversed a judgment for the defendant in a personal injury action because Hubbard's various acts of misconduct formed a pattern which permeated the trial and tainted the judgment. Specifically, he harassed opposing counsel during pre-trial discovery; engaged in improper cross-examinations; made erroneous statements of fact to the trial court and of law to the jury; examined a witness on exhibits not in evidence which he did not show to opposing counsel; and made inflammatory statements in closing argument. Id. at 412–413, 415–417, 424 and 427, 179 N.E.2d 449. The opinion also ordered that the case be remanded for a hearing on a motion to assess expenses and attorney's fees due to the misconduct. Id. at 427–428, 179 N.E.2d 449. In Cline v.

Kirchwehm Bros. Cartage Co., Inc., 42 Ill.App.2d 85, 191 N.E.2d 410 (1963) a new trial on the issue of damages was ordered because of Hubbard's misconduct including, once again, improper cross-examination and repeated disregard for rulings of the trial judge. Most recently, in People ex rel. General Motors Corp. v. Bua, 37 Ill.2d 180, 226 N.E.2d 6 (1967), Respondent Hubbard was found to have "sought to obstruct the orderly processes of discovery" by harassing opposing counsel contrary to "the spirit of the rules." Id. at 192 and 195, 226 N.E. 2d at 14.

It is important to note that these past acts of misconduct are of the same nature as those engaged in during and preceding the first trial of this case. This is especially so in regard to four types of misconduct: 1) making misstatements of fact and law to the juries and the courts, 2) using harassing and obstructionist tactics in pre-trial discovery, 3) injecting inflammatory statements into argument which were calculated to prejudice the juries, and 4) conducting improper cross-examination on matters not in evidence or on issues to which the court had already sustained objection.

Not satisfied with the lesson he should have learned from the outcome of the first trial and the judgment of costs against him, Hubbard continued his misconduct at the second trial. During the argument on the defendant's motion for a new trial at the end of the second trial, Judge Decker expressed his strong disapproval with the misconduct at the second trial. Judge Decker reprimanded Hubbard for seeking numerous postponements of the second trial and then appearing on the date specifically set asking for a stay due to the appeal in this case which Hubbard had been preparing all along but of which he had never notified the trial court. Hubbard, while reading a deposition aloud changed an answer from "incorrect" to "correct," thus reversing its meaning. He also stated that thousands of motels were equipped with the type of door lock involved in the case when, in fact, there were not thousands of motels but thousands of locks in a small number of motels. But these were not the gravest acts of misconduct.

At one point, Hubbard stated that Mrs. Kiefel had been asked a question and had answered and represented this as part of her testimony at the first trial. In fact, the question and answer had been stricken at Hubbard's own objection. Judge Decker gave him an opportunity to correct his statement to the jury. When Hubbard did not choose to do so, Judge Decker commented, Appendix vol. II at 761:

> The Court: All right. Well, I don't know what a court—what a Court of Appeals would say as to the propriety of trial tactics should [sic] as you engaged in telling the jury that this was her testimony at the last trial when the record shows that the question and the answer were both stricken. Now, perhaps that will someday be called to the Court's attention.

At the hearing on the defendant's motion for a new trial, Hubbard accused the court of prejudicing the jury by raising his voice. Judge Decker could only recall one instance where he raised his voice and that occurred when Hubbard tried to surreptitiously slip an exhibit into the jury room which had been denied admission more than once. He said, Additional Appendix at 205–06:

> I will plead guilty to at least one occasion when I raised my voice above its normal level. It occurred, however, at the conclusion of the case and out of the presence of the jury when the defendant's counsel presented me with a number of defendant's exhibits which he asked me to have taken to the jury room. It was discovered that included among these exhibits was one particular selected portion of a medical record to which objection had been repeatedly sustained during the trial, not once, but a number of times. *In my opinion, the insertion of this exhibit which had not been admitted in evidence was not inadvertent.* I can say that a trial

judge's patience is not inexhaustible. I did raise my voice. [Emphasis added.]

Just as "No man is an island unto himself" but each has effect on the whole, no attorney stands by himself. Each attorney's acts reflect on the entire profession. Respect for one encourages respect for all while the misconduct of one impairs the integrity of all. The unprofessional conduct in these two trials and in the history of Hubbard's practice as shown by prior appellate opinions is outrageous in nature. In *Quality Molding,* we declined to assume that his misquotation before this court was intentional. We can no longer indulge in an assumption of inadvertence, especially as to the misconduct shown in this case. Nor is there any doubt that Hubbard could be unaware that his conduct could lead to an assessment of costs against him in view of the fact that in Ryan v. Monson, a remand was had for that very purpose.

While the assessment of costs is provided for by the statute, attorneys' fees are not ordinarily assessed on a party. As stated in Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714 at 717, 87 S.Ct. 1404 at 1407, 18 L.Ed.2d 475 (1967):

> The rule here has long been that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor. This Court first announced that rule in Arcambel v. Wisemann, 3 Dall. 306, 1 L.Ed. 613 (1796).

Attorney's travel expenses for taking of depositions are not taxable. Michigan Aluminum Foundry Co. v. Aluminum Co. of America, 190 F. 903 (CCA 1911) and Hope Basket Co. v. Product Advancement Co., 104 F.Supp. 444 (W.D.Mich.1952).

From and under the application of the various sections of 28 U.S.C. the court finds and concludes:

That the sum of Six Thousand One Hundred Dollars ($6,100.00) comprising attorneys' fees:

|  |  |
|---|---|
| (a) James A. Brandvik, the sum of— for the trial of this cause; | $2,000.00 |
| (b) Lowell H. Jacobson, the sum of— for the trial of this cause; | 3,000.00 |
| (c) James A. Brandvik and Lowell H. Jacobson, for services in connection with the post-trial motion— | 1,000.00 |
| (d) James A. Brandvik, attorney's fees in connection with the Las Vegas deposition of Sharon Hamlin— | 100.00 |
| Total Attorney's Fees ..................... | $6,100.00 |

are eliminated from the judgment hereinbefore entered.

The court has further considered the costs:

|  |  |
|---|---|
| (e) Air fare to Las Vegas and return regarding deposition of Sharon Hamlin— | $ 230.36 |
| (f) Meals and lodging incurred by Attorney James A. Brandvik in connection with deposition— | 100.00 |

and eliminates these items in the sum of Three Hundred Thirty Dollars and Thirty-six Cents ($330.36).

The Court sustains the costs:

| | | |
|---|---|---|
| (a) Claude Youker, reporter's bills— | | $ 947.15 |
| (b) Graham & Associates, for service of summons on expert witnesses, mileage and advancement of witness fees— | | 101.80 |
| (c) Court Reporter Stella Butterfield for copy of Sharon Hamlin deposition not previously filed— | | 17.25 |
| (d) Expert witness fees for plaintiff's experts as follows: | | |
| 1. Dr. Textor | $ 75.00 | |
| 2. Dr. Halstead | 250.00 | |
| 3. Dr. Cutler | 150.00 | |
| 4. Locksmith James Busch | 200.00 | 675.00 |

in the total sum of Seventeen Hundred Forty-one Dollars and Twenty Cents ($1,741.20) against Reese Hubbard personally.

———◆———

The Court further finds under 28 U.S. C. § 1927 that because of the additional proceedings caused by the conduct of Reese Hubbard, this matter is remanded to the trial judge for assessment of costs against Reese Hubbard for the expenses of printing plaintiff-appellee's 54 page brief and the additional appendix in No. 15976 and a sum no greater than one-third (⅓) the plaintiff-appellee's attorneys' fee incurred in the appeal of cases Nos. 15933, 15976 and 16210.

It is hereby ordered that the district court give and enter judgment in favor of plaintiff, Donna M. Kiefel for the use and benefit of her attorneys, James A. Brandvik and Lowell H. Jacobson, and against Reese Hubbard individually in the amount of Seventeen Hundred Forty-one Dollars and Twenty Cents ($1,741.-20) and the additional amounts consisting of no more than one-third plaintiff-appellee's attorneys' fee incurred as a result of the appeal of cases Nos. 15933, 15976 and 16210, and the total cost of printing plaintiff-appellee's 54 page brief and the additional appendix in No. 15976 as reimbursement for costs by plaintiff-appellee's attorneys for and on behalf of plaintiff-appellee.

Affirmed in part, reversed in part, remanded with directions.

Case No. 16210

The second trial was had before the Honorable Bernard M. Decker. At the conclusion of the trial, the jury reached a verdict in favor of plaintiff-appellee Donna Kiefel in the amount of One Hundred Thousand Dollars ($100,000.00) against defendant-appellant Las Vegas Hacienda, Inc. (hereafter called Hacienda). Judgment was entered on the verdict against Hacienda and an order was entered on March 15, 1967, increasing the costs taxed by the clerk by an additional One Hundred Sixteen Dollars and Ten Cents ($116.10). From this judgment and order, Hacienda appeals.

The primary issue raised by this appeal is whether the facts were sufficient in law to support the jury's verdict. The three particular questions asked by Hacienda are:

1. Was the lock actually forced open on the night of the occurrence?

2. Was the assailant an unknown intruder or might it have been Carl Kiefel, plaintiff's husband?

3. Did Donna Kiefel lock the door before going to bed, or did she leave it open for her husband?

The testimony in the record indicates the lock used on the door to Room 315 was a Schlage lock, model A 51–PD. The

projection of the bolt in the lock taken from the door is ⅜ of an inch. Witness James Busch, a master locksmith, testified the lock was defective, since there was ⅛ of an inch of play or 33⅓% of the total length of the bolt. Additionally, there was testimony that the door was loose fitting and the cutting of the door for the installation of the lock was larger than necessary, allowing additional play of another ⅛ of an inch, leaving only ⅛ of an inch security in the lock. Daniel G. Olson, Schlage Lock Company representative, testified there was evidence of a "gouge" on the lock resulting in damage. The local police department was on the scene and in the course of the investigation noted there were fresh paint chips from the door and molding at the base of the lock and chips on the floor at the door entry to the room "that appeared to be of the same type of paint that was present on the door and door jamb and appeared to be relatively fresh." The police report recorded that "upon closer examination noted the door had recently been shimmed."

Additionally, on the night of the incident, travellers checks were reported stolen from Donna Kiefel's purse which was in the room when the assault occurred. These checks were located by the police the following day and were determined to have been forged and cashed at a hotel several blocks from the Hacienda by an unknown person.

All of this information was before the jury through exhibits, depositions, and examination and cross-examination of the witnesses. There was adequate latitude allowed by the trial court for the defense to raise the questions of fact now placed before this court as well as the tactical interplay by defense counsel. The jury found the factual questions in favor of the plaintiff and there are adequate grounds for its so finding.

Hacienda also contends that the trial judge erred in refusing to admit its Exhibit No. 7 into evidence. Exhibit No. 7 consisted of one page of the nurses' notes which were notes made by the nurses attending Donna Kiefel during her hospi-

talization. The pertinent portion of Exhibit No. 7 are notes made by Nurse Sharon Hamlin of a statement made by Donna Kiefel at approximately 3:00 a. m. on March 4, 1962. The notes indicate that Donna Kiefel said she left "the door unlocked so that her husband could come in—."

 We find no reversible error in excluding Exhibit No. 7. This exhibit was one page copied from Exhibit No. 10–A which consisted of all the pertinent hospital reports. Exhibit No. 10–A was admitted into evidence and Nurse Hamlin was examined on it at length. Thus, there was no omission of this important evidence as it was presented to the jury and presumably weighed in arriving at its verdict.

We perceive no error in the other objections raised by Hacienda.

The judgment on the verdict and the order taxing costs are hereby affirmed.

Affirmed.