Job Walker, Appellee, v. Shea-Matson Trucking Company, and Martin Ryan, Appellants.

Gen. No. 45,369.

Opinion filed September 26, 1951.
Rehearing denied November 13, 1951. Released for publication November 15, 1951.

HUBBARD, HUBBARD & DORGAN, of Chicago, for appellants.

SHAVIN & HAMILTON, and LEO S. KARLIN, all of Chicago, for appellee; LEO S. KARLIN, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.

This is an action to recover damages for personal injuries alleged to have been sustained by plaintiff as a result of a collision between an automobile, in which he was riding as a guest, and a truck owned by defendant Shea-Matson Trucking Company and operated by defendant Ryan. Trial by jury resulted in a verdict and judgment for $90,000. Defendants' motions for judgment notwithstanding the verdict and for a new trial were overruled. Afterwards upon the filing by plaintiff of a remittitur of $20,000 the judgment was reduced in a like sum. Defendants appeal.

The collision occurred about 12:30 p. m. on May 11, 1948, at the intersection of Damen Avenue and Polk Street in the City of Chicago, Cook county, Illinois. These streets intersect at right angles. Early on the day of the accident it had rained and at the time of the collision the streets were slightly damp. The visibility was good and there were no obstructions to vision at the intersection. Damen Avenue at the intersection of Polk Street is 56'2" wide from curb to curb and has a double set of streetcar tracks running down the center. The distance between the east rail of the streetcar tracks and the curb of Damen Avenue is 20'5". Polk Street is 38 feet wide from curb to curb. Plaintiff was riding north on Damen Avenue in an automobile driven by Curtis Hall, his employer. Defendants' truck was being driven east on Polk Street. On the day of the occurrence Curtis Hall left his place of business, a short distance south of the scene of the accident, accompanied by plaintiff and one John Thomas, another employee. Plaintiff sat in the rear seat of the automobile on the left side, and Thomas sat next to Hall. As Hall drove north on Damen Avenue his automobile was

468

about two or three feet from the east curb and when it neared Polk Street there were two automobiles proceeding in the same direction, the nearest one of which was twenty or thirty feet ahead of him. This car slowed down as it reached Polk Street, and Hall's automobile, which had been traveling about 20 to 25 miles an hour, also slowed down to 15 or 17 miles an hour when it reached a point about 15 feet south of the south curb of Polk Street.

Hall testified that about 15 feet south of Polk Street he saw defendant's truck about 75 feet west of Damen Avenue; that after his automobile had traveled about one-fourth of the way across Polk Street defendant's truck was about 15 feet west of the west curb; that the next time he looked his automobile was about three-fourths of the way across Polk Street when the truck "was right on me"; that the entire rear of his automobile on the left side was pushed in; that after the impact the truck went only four or five feet before it stopped, and that neither the automobile nor the truck skidded.

John Thomas, testifying in behalf of plaintiff, corroborated the testimony of Hall.

Two police officers, Walsh and Rubyar, assigned to the Accident Prevention division, testified that they reached the scene of the accident shortly after the collision and found Hall's automobile against the northeast curb of Polk Street and Damen Avenue, facing west; that the front end of the truck was between the east curb and the northbound streetcar tracks of Damen Avenue; that the grill on the front of the truck was bent and Hall's automobile was damaged at the left rear door.

Job Walker, plaintiff, aged thirty-three, testified that Hall slowed his car down to somewhere between 15 and 18 miles an hour at a point 16 to 18 feet south of the south curb of Polk Street; that when Hall's

automobile was eight or ten feet north of the south curb of Polk Street defendant's truck was twelve or fifteen feet west of the west curb of Damen Avenue; that "it seemed like he was going to stop; I didn't see the truck again"; that Hall's automobile was "somewhere" three-fourths of the way across Polk Street when it was hit by defendant's truck; that the first time plaintiff saw the truck it was twelve or fifteen feet west of the west curb of Damen Avenue and the front wheels of Hall's automobile were about a quarter of the way in from the south curb of Polk Street, and that he did not see the truck until after Hall's automobile had entered the intersection.

Edward Quinn, also a police officer, who came to the scene of the accident before officers Walsh and Rubyar, testified that he found Hall's automobile parked on the north side of Polk Street facing west, and that the truck had the right front fender and headlight damaged and the left front of the automobile was damaged.

Edward Sharp, testified on behalf of defendants that he was standing on the northwest corner of Polk and Damen at the time of the occurrence, where he noticed defendant's truck coming east on Polk Street and heard "tires squeak"; that he saw Hall's automobile coming north on Damen; that Hall tried to swerve around the front of the truck; that the right front fender of the truck hit the left front fender of Hall's automobile and damaged its left side; that the truck was traveling south of the center line of Polk Street and stopped immediately after the collision; and that Hall's automobile continued north on Damen Avenue 30 or 35 feet after the collision.

George Dick testified that Hall's automobile was coming north on Damen Avenue at about 35 miles an hour; that Hall swerved around the truck; that the two vehicles came together east of the northbound

470

streetcar tracks; that Hall tried to swerve out of the truck's way; that he "skidded around" and went sideways in front of the truck; and that Hall's automobile was "sideswiped," "the kind of damage that shears back."

Defendant Ryan testified that when he reached the west side of Damen Avenue he "practically" came to a stop, and that Hall's automobile was about 75 or 100 feet away coming toward the intersection; that the front wheels of his truck were over the northbound or east rail of the streetcar tracks when he saw Hall's automobile "on top of me." Ryan further testified that he was traveling between 10 and 15 miles an hour at the time of the collision; that he applied his brakes and swerved to the left, making a forty-five-degree turn; that the front fender of Hall's automobile struck the front fender of the truck; and that Hall's automobile scraped "along the corner of the truck."

In this case, as in most cases involving intersectional collisions, there is a sharp conflict in the evidence as to the speed and relative positions of the vehicles before the impact.

Defendants contend that the trial court erred in giving the instruction at the request of the plaintiff, which reads:

"The Court instructs the jury that at the time of the happening of the events in question, there was in full force and effect in the State of Illinois, a statute pertaining to the operation of motor vehicles, providing among other things, as follows:

" 'Vehicles approaching or entering intersection— Except as hereinafter provided motor vehicles travelling upon public highways shall give the right of way to vehicles approaching along intersecting highways from the right and shall have the right of way over those approaching from the left.'

"And you are further instructed that you have a right to take into consideration, together with all the other facts and circumstances admitted into evidence at the trial, under the instructions of the court, whether or not the defendant in the operation of the motor vehicle in question, negligently violated the statute, and whether or not such violation, if any, together with all the other facts and circumstances admitted into evidence, constituted negligence, as defined in these instructions, and whether such negligence, if any, was the proximate cause of the injury or loss suffered by the plaintiff, if any."

Defendants contend that since the instruction is in the language of the statute it is defective because it fails to tell the jury that they must also take into consideration the distance the vehicles were from the point of collision and the speed of their approach.

Plaintiff says that the primary question presented for determination is whether one, the other, or both of the operators of the vehicles involved were negligent, irrespective of which one of them had the right of way; that although the question of right of way is a circumstance to be considered in determining the over-all problem of negligence, it cannot be made a controlling issue by way of defense in this type of case.

■■ Our courts of review have repeatedly held that the right-of-way statute does not give an automobile approaching an intersection the absolute right of way over one approaching from the left without regard to the distance that vehicle may be from the intersection or the speed at which the vehicles are traveling. See *Gauger v. Mills*, 340 Ill. App. 1; *Alexander v. Sullivan*, 334 Ill. App. 42; *Bentley v. Olson*, 324 Ill. App. 281; *Paliokaitis v. Checker Taxi Co.*, 324 Ill. App. 21; and *Krawitz v. Levinstein*, 320 Ill. App. 618. Although the instruction was in the language of the statute a modified construction was placed upon the statute by

our courts of review and it should have been framed according to that construction and the jury properly instructed as to its legal effect. (*Moran v. Gatz,* 327 Ill. App. 480; *Burns v. Jackson,* 224 Ill. App. 519; Hemphill, Illinois Jury Instructions, vol. 1, sec. 237, p. 112.) This instruction is misleading because it tells the jury in effect that plaintiff had the right of way.

██ We are not unmindful that our courts recognize the "harmless error" doctrine which disregards error in some isolated instruction when others in the series may explain it and render it harmless. In the present case, however, there are no other instructions given that explain or remove the error of the instruction objected to. Moreover, the instruction complained of was the only instruction given to the jury which referred to the right-of-way statute. It may well be that in the minds of the jury the question of the right of way was one of the circumstances, if not a controlling circumstance, that influenced them in reaching their verdict. In our opinion the instruction is prejudicially erroneous, and we are therefore impelled to reverse the judgment and remand the cause for a new trial.

In the event the cause is retried, we rule on other errors assigned, for the purpose of guiding the trial court.

██ Defendants complain of the court's refusal to give an instruction which states in effect that defendant was not required to yield the right of way if the jury believed that defendant's truck had reached a point east of the center of Damen Avenue before Hall's automobile entered the intersection. We think this instruction is defective for the reason that it does not not make any reference to the relative position of the vehicles involved before entering the intersection, or to the speed at which they were traveling. The instruction was, therefore, properly refused.

■ Defendants insist that the court erred in excluding an exhibit entitled "Release from Responsibility for Discharge." The body of the exhibit recites, in substance, that the plaintiff, a patient in the People's Hospital, was discharged against the advice of the attending physician and of the hospital administration; that he was informed of the risk involved and released the attending physician and the hospital from all responsibility for any ill effects which may result from such discharge. Below the printed portion of the exhibit appears the following insertion: "I refuse a cast to be put on." The exhibit bears the signature of plaintiff, Dr. J. N. Houston, and a nurse. Plaintiff admitted signing the exhibit but said he did not read it nor did he know its contents. He denied being discharged against the advice of the attending physician and of the hospital. He also testified that the hospital authorities did not tell him that he was being discharged against the advice of the attending physician and of the hospital. Since the plaintiff repudiated the paper in the form in which it was presented to him and denied knowledge of its contents, and there being no countervailing evidence offered by defendants tending to prove the circumstances under which it was signed, the exhibit was properly excluded. See *Belskis v. Dering Coal Co.*, 246 Ill. 62.

It is not necessary for us to rule on the other questions presented, such as the verdict being excessive, the admission of certain photographs showing plaintiff's injury, and alleged irregularities with respect to communications of the judge to the jury during their deliberations.

For the reasons given, the judgment is reversed, and the cause is remanded for a new trial.

*Reversed and remanded for new trial.*

KILEY, P. J. and FEINBERG, J., concur.