Delores Anderson, Plaintiff-Counterdefendant-Appellee, v. Harriett Middleton, Executor of Estate of Mamie McLemore, Deceased, Defendant-Counterplaintiff-Appellant.

Gen. No. 9,864.

Opinion filed March 3, 1953. Rehearing denied May 5, 1953. Released for publication May 6, 1953.

CASSIDY & SLOAN, of Peoria, for appellant.

HEYL, ROYSTER & VOELKER, of Peoria, for appellee; CLARENCE W. HEYL, and WILLIAM J. VOELKER, JR., both of Peoria, of counsel.

MR. PRESIDING JUSTICE WHEAT delivered the opinion of the court.

Plaintiff-appellee Delores Anderson obtained judgment of $2,500 on jury verdict against defendant-appellant Harriett Middleton, executrix of the estate of Mamie McLemore, deceased, by reason of personal injuries sustained in the collision of two automobiles. On a counterclaim filed by said executrix, tried in the

same action, judgment on jury verdict was entered against counterclaimant. Upon denial of motion for judgment notwithstanding the verdict and motion for new trial, this appeal follows. For convenience the terms plaintiff and defendant will be used in this opinion in referring to the respective parties, including reference to the action on the counterclaim.

It appears that on May 29th, 1951, about 3:30 p. m. in Fulton county, Illinois, a Ford automobile being operated by Jerome Eades, in which plaintiff was a front-seat passenger, was being driven easterly on Route 116, a concrete highway eighteen feet in width, toward its intersection with Route 97, an eighteen-foot concrete highway, extending north and south. Route 116 had been designated a preferential highway and a stop sign had been placed on the west side of Route 97 as it approached Route 116 from the north, and a similar sign on the east side as it approached Route 116 from the south. The deceased, Mamie McLemore, about seventy-five years of age, at such time was driving a Plymouth in a southerly direction on Route 97 as it approached Route 116 from the north. She stopped her car at the stop sign northwest of the intersection, then proceeded to the south across the intersection, at which time her car was struck on the right side by the front end of the oncoming easterly-bound car, resulting in her death and causing the injuries to plaintiff Anderson. Decedent was the sole occupant of the Plymouth car; Jerome Eades and Delores Anderson were the only occupants of the Ford car. No other cars were on either highway near the intersection. Frank Woods, who lived at the northeast corner of the rural intersection, was the only nonoccupant occurrence witness. The day was clear and the pavement dry. As the Ford car proceeded west on Route 116 before the collision, it travelled up a grade the crown or top of which was 900 to less than 1300 feet

60

west of the intersection. Easterly from this point its driver Eades and the driver of the Plymouth car as it was stopped at the stop sign, had an unobstructed view each of the other, Route 116 being thereafter level easterly to the intersection. On the south side of Route 116 a sign reading, ''Slow—junction ahead'' was located about 500 feet west of the intersection. For a distance of twelve feet in all four directions from the 18x18 foot intersection, the concrete portions of the two highways are forty-two feet instead of eighteen feet in width, that is, from each direction, each highway becomes forty-two feet wide for a distance of twenty-one feet from the center of the intersection. After the collision the Ford car was headed east on the south part of Route 116 to the east of the intersection, its rear end slightly in the intersection. Skid marks extended west from its rear wheels in straight lines a distance of 185 to 191 feet in the south half of Route 116. The Plymouth car was about twelve feet south of the Ford car at the southeast corner of the intersection headed northeasterly. Plaintiff, aged twenty, received injuries including the loss of the tip of her nose, necessitating plastic surgery.

The witness Jerome Eades testified that he was twenty-two years of age; was driving the car owned by the father of plaintiff; plaintiff sat in the front seat and just prior to the collision did not say or do anything; he was driving sixty to seventy miles per hour (later said sixty to eighty miles per hour); he saw defendant's car stopped at the intersection and had a clear, unobstructed view of it; he slowed down and as defendant's car started to cross the intersection he applied the brakes, locked the wheels, slid forward, and struck the other car after it had crossed the north half of the intersection.

Frank Woods testified that he lived at the northeast corner of the intersection, was sitting in the yard fac-

61

ing southwest and was straight east from the stop sign located at the northwest corner about seventy-five yards distant; defendant's car stopped at this sign for fifteen to thirty seconds; the lady looked east and west and slowly started south, at about three miles per hour; no other car was then visible, but he then saw the car in which plaintiff was riding, come over the crown of the hill; it all happened quickly; Eades' car was going at least seventy miles per hour; a large tree obscured the vision of witness at the instant of the collision of the two cars. On cross-examination he stated that he did not see the actual collision because of the tree; Miss McLemore stopped her car for a half minute or a minute; after looking both ways she started south and didn't look either east or west, just straight ahead. "I wondered if she was going to pull out there in front of it because it was coming at a terrific rate of speed. I had a notion to whistle at her and then I thought maybe that might confuse her, so just about that time, why, they crashed." He stated that he had previously testified by deposition, and although the record stated that when he first saw Eades' car it was 150 yards away, such record was incorrectly reported and transcribed.

 Among the assignments of error, one relates to the giving and refusing of instructions. Plaintiff's given Instruction No. 12 set forth the language of the statute, par. 167, chap. 95½ (Motor Vehicle Act) Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 85.199], which provides that preference may be given to traffic upon a highway, over traffic crossing or entering such highway, by erecting stop signs, and in such case vehicles crossing or entering such highway shall come to a full stop as near the right-of-way line as possible, and shall give the right of way to vehicles upon such highway. It is noted that it is undisputed that defendant's testate did stop at the sign so that the only question remaining

related to her giving the right of way to the car in which plaintiff was a passenger. As to this the general subject of right of way at intersections regardless of stop signs thus becomes pertinent, that is, after defendant's testate did stop, thus eliminating that phase of the subject, who then had the right of way as she again put her car in motion? This was a close case factually and it was important that the jury be correctly instructed. It has been held consistently that a right of way is not an absolute right and it cannot be asserted regardless of circumstances, distance, or speed. (*Walker v. Shea-Matson Trucking Co.*, 344 Ill. App. 466.) The giving of this instruction without qualification, constituted reversible error. Other errors are assigned but need not be discussed, as they will no doubt be obviated upon a retrial of the case.

The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*