Louise McElligott, Individually and as Administrator of the Estate of Francis W. McElligott, Deceased, Plaintiff-Appellant, v. Illinois Central Railroad Company, Defendant-Appellee.

Gen. No. 65–2.

Fifth District.

August 3, 1966.

Rehearing denied August 26, 1966.

Kassly, Weihl, Carr & Bone, of East St. Louis, for appellant.

Burroughs, Simpson & Burroughs, of Edwardsville (Robert Mitten, Robert S. Kirby, and Paul M. King, of counsel), for appellee.

MORAN, J.

This is an appeal from the Circuit Court of Madison County, Illinois, in a wrongful death-personal injury action based upon a train-automobile collision. The first trial of the case resulted in a hung jury. In the second trial the plaintiff obtained a verdict as administratrix for the death of her husband and for her own personal injuries. The trial court ordered a new trial and the plaintiff's Petition for Leave to Appeal was granted.

On March 4, 1960, the plaintiff was driving an automobile in which her husband was a passenger. As she approached the Illinois Central Railroad crossing at 19th Street in Belleville, she observed a train headlight shining over a garage located to her right. She estimated that her speed at the time was 15 m. p. h. and that she was 30 feet from the crossing. There had been snow and ice on the ground for a least a week prior to the accident. The crossing and its approaches, at the time of the accident, had not been cindered or salted, and they contained snow and ice and were very slippery.

As the train traveled, it was going upgrade and the automobile, as it traveled, was going down a slight grade. Upon seeing the headlight, the plaintiff applied her brakes and then heard the train whistle which she had not heard before. When she applied her brakes, the automobile commenced sliding on the icy downgrade and, although she pumped her brakes and turned her front wheels to the left, it continued to slide toward the train. The automobile and the train came into collision at about the center of the street and about 10 feet from the front

of the engine. The plaintiff estimated the speed of the train to be 45–50 m. p. h. As a result of the collision, the plaintiff suffered injuries and her husband died.

The particular crossing was not guarded by automatic flasher lights, gates or flagmen. The railroad's right-of-way was 100 feet in width, 50 feet on either side of the center of the track. The railroad had asphalted an area four feet wide, on both sides of the track. The city of Belleville had paved 19th Street to within four feet on each side of the track. It had also constructed curbs and sidewalks to within two feet on each side of the track.

The plaintiff, in her own right and as administrator of her husband's estate, filed suit against the defendant railroad company, alleging several acts of negligence in that the defendant:

 (a) Failed to cause a bell and whistle or horn to be rung or sounded at the distance of at least eighty rods from the intersection, contrary to Ill Rev Stats c 114, § 59.

 (b) Operated the said train at an excessive and dangerous speed having due regard to the conditions then and there existing.

 (c) Negligently and carelessly failed to exercise reasonable care in giving adequate and timely warning of the approach of its train to said crossing under the conditions then and there existing.

 (d) Negligently and carelessly failed to provide automatic flasher lights, warning lights, gates, or flagmen at said crossing.

 (e) Negligently and carelessly failed to maintain its said crossing and its approaches thereto within its right-of-way so as to be safe as to persons crossing same contrary to Ill Rev Stats c 114, § 62, and to Illinois Commerce Commission Rule No. 206.

127

The defendant denied these charges and filed affirmative defenses to the effect that the plaintiff had not exercised due care, which defenses were stricken by the court as not alleging new matter. The first trial of the issues resulted in a hung jury.

The issues were subsequently retried in January, 1964, and the jury awarded the plaintiff $25,000 damages and awarded the estate of her husband $18,000 damages. During the course of the trial the plaintiff introduced into evidence, over the objection of the defendant, Illinois Commerce Commission Rule No. 206 which provides that:

> At every grade crossing where the duty of constructing or maintaining either the crossing proper or its approaches (or any part thereof) is by statute, by order of the Commission, or in any lawful manner, placed upon a railroad company, it shall be the duty of the railroad company to construct and maintain the crossing or approaches so that at all times they will be safe as to persons or property.

The objection was made because there was no showing that the Rule was relevant in that there was no indication "as to what right-of-way was concerned."

Objections were also made to several instructions. Plaintiff's Instruction No. 10 provided that:

> At the time of the occurrence in question there was in force in the State of Illinois a statute which provided that:
>
>> Hereafter, at all of the railroad crossings of highways and streets in this state, the several railroad corporations in this state shall construct and maintain said crossings, and the approaches thereto, within their respective right-of-way so that at all times they shall be safe as to persons and property.

128

If you decide that the defendant violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances and evidence in determining whether or not the defendant was negligent before or at the time of the occurrence.

Plaintiff's Instruction No. 11 provided that:

The plaintiff claims that she was injured and sustained damage and that decedent was killed while she and decedent were exercising ordinary care, and that the defendant was negligent in one or more of the following respects:

(a) In failing to sound the horn or bell on the engine when one-fourth of a mile from the crossing and in failing to keep sounding the horn or bell until the crossing was reached, contrary to a certain Statute of the State of Illinois.

(b) In operating its train at an excessive rate of speed in view of the conditions then prevailing.

(c) In failing to give adequate and timely warning of the approach of its train to the crossing in view of the conditions then prevailing.

(d) In failing to provide automatic flasher light or warning lights or gates or flagmen at the crossing when the defendant knew, or should have known, that a large number of motorists frequently travel the crossing, that the view of the tracks to the east was obstructed, and that the street approach to the crossing from the south was on a downgrade.

(e) *In failing to maintain its crossing and its approaches thereto within its right-of-way so as to be safe as to persons crossing same.*

The plaintiff further claims that one or more of the foregoing was the proximate cause of her injuries and of the death of decedent.

The defendant denies that it was guilty of negligence in doing any of the things claimed by plaintiff, and denies that the plaintiff and the decedent were in the exercise of ordinary care.

Defendant further denies that plaintiff was injured or sustained damages to the extent claimed. (Emphasis supplied.)

The defendant objected to plaintiff's Instruction No. 10 because the instruction did not limit the term "approaches" to the distance of four feet and because it used the words "within their respective right-of-way." The defendant objected to plaintiff's Instruction No. 11 because it "reiterates in paragraph (e) a duty of the defendant, not required by law, and does not fully state all the issues by the parties," especially the affirmative defenses concerning contributory negligence which were stricken by the court. At no time during the instruction conference did the defendant's counsel or the court indicate any dissatisfaction with the use of the word "safe" without a qualifying adjective or adverb.

In defendant's post-trial motion for a directed verdict, or, in the alternative, for a new trial, it was claimed that the court erred in admitting Rule No. 206 because the "jury was improperly led to believe that the defendant was required to remove ice and snow from its right-of-way" and because the "defendant was not afforded the opportunity to show that said order has not been interpreted to impose such a duty on this defendant or on any carrier." The defendant made no post-trial claim that the court erred in giving any of the plaintiff's

instructions. However, the trial court ordered a new trial, stating in a lengthy opinion that it was error to use the word "safe" in Rule No. 206 and in plaintiff's Instructions Nos. 10 and 11 because the use of the word made the defendant an insurer and implied that the defendant had an absolute duty to maintain its crossing and the approaches thereto safely and that it was error to use the word "approaches" in the instructions and in the rule because the jury was in effect told that the defendant had the duty to maintain the area within the entire right-of-way. All other allegations of error made by the defendant were resolved by the court in the plaintiff's favor and its motion for a directed verdict was denied. The defendant has not appealed from this decision and any errors contained therein are waived.

■ Ordinarily, an appellate court will not review an order granting a new trial unless there is a showing that the court clearly and palpably abused its discretion. However, where only the correctness of a trial court's ruling on questions of law is involved, a court of review should allow a petition for leave to appeal from an order granting a new trial when a question is reasonably presented as to whether the court erred in so ruling. Randall v. Randall, 281 Ill App 169; Loucks v. Pierce, 341 Ill App 253, 93 NE2d 372; Hall v. Chicago & N. W. Ry. Co., 349 Ill App 175, 110 NE2d 654. We granted plaintiff's petition for leave to appeal because we believe that this case presents debatable questions of law.

■ The plaintiff-appellant first argues that any alleged errors upon which the trial court based its order for a new trial were waived by the defendant in that the defendant's post-trial motion did not allege the errors, in that the amendment to the post-trial motion was a nullity, and in that proper objections were not specifically made to the instructions at the instruction conference. However, as recently enunciated by our Supreme Court in Freeman v. Chicago Transit Authority,

131

33 Ill2d 103, 210 NE2d 191, the power of a trial judge to grant a new trial on its own motion, for reasons not raised by either party, has been recognized in Illinois. Justice Schaefer, speaking for the court, emphasized at 194:

> Orders granting new trials were not appealable at all until the Civil Practice Act became effective in 1934, and apparently the authority of a trial court to grant a new trial on its own motion has not been considered by this court. But in those jurisdictions that have considered the question the power is firmly established. Fort Wayne & Belle Isle Ry. Co. v. Wayne Circuit Judge, (1896) 110 Mich 173, 68 NW 115; Bank of Willmar v. Lawler (1899) 78 Minn 135, 80 NW 868; Clark v. Great Northern Ry. Co. (1905) 37 Wash 537, 79 Pac 1108; 2 Ann Cas 760; see cases collected, 48 ALR 362, 23 ALR2d 852; cf. FR Civ P Rule 59. These decisions are based upon a recognition that the role of a trial judge is not that of a presiding officer or an umpire, and that he is responsible for the justice of the judgment that he enters. The defendant's argument would take away that responsibility and tend to reduce his role to that of an automaton.

The plaintiff next argues, contrary to the decision of the trial court, that the giving of the two instructions and the admission of the Rule did not constitute reversible error and that the order of the trial court should be reversed.

Concerning Instruction No. 10, the court found and the defendant argues that the statute which is cited therein had been repealed by Ill Rev Stats c 111⅔, § 62 (Public Utilities Act), that a judicial modification of the statute cited had occurred and that the modification was not contained in the instruction, and that the effect

of the instruction as given was to place the duty of an insurer upon the defendant.

■■ In support of the first finding, the defendant quotes a portion of the Public Utilities Act, Ill Rev Stats c 111⅔, § 62: "The commission shall have the power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, use and protection of each such grade crossing." Relying upon Illinois Cent. R. Co. v. Franklin County, 387 Ill 301, 56 NE2d 775, the defendant argues that this part of the Act repealed Ill Rev Stats c 114, § 62 (§ 8 of the Railroad Act), which provides in part that:

> Hereafter, at all of the railroad crossings of highways and streets in this state, the several railroad corporations in this state shall construct and maintain said crossings, and the approaches thereto, within their respective rights-of-ways, so that at all times they shall be safe as to persons and property.

This is the portion of the Railroad Act which formed the basis of plaintiff's Instruction No. 10. The defendant argues that the Public Utilities Act, as construed in the Franklin County case, repealed section 8 of the Railroad Act. The court in that case analyzed the same two sections and determined at 311 that:

> The acts are so inconsistent that both cannot operate. In this situation the *repugnant* provisions of the Railroad Act must yield to the Public Utilities Act . . . , it being the later act. As so construed, both acts may operate in their respective fields. The provisions of the Railroad Act are still *effective* in so far as such provisions are *not in conflict with,* or *repugnant to,* the provisions of the later Public Utilities Act covering the same subject matter. (Emphasis supplied.)

133

The defendant failed to quote this latter sentence recognizing the compatability of the two sections where no conflicts exist. In addition, the defendant failed to point out that the specific provisions under consideration in that case were definitely in conflict. The Illinois Commerce Commission had ordered a bridge reconstructed and, in accordance with powers granted to it by the Public Utilities Act, it apportioned the cost between Franklin County and the Illinois Central Railroad. Franklin County objected to the payment of any part of the cost and argued that the railroad must bear the entire cost, citing section 8 of the Railroad Act.

In this case, no such conflict exists between the Public Utilities Act and the Railroad Act. There is no attempt in the Public Utilities Act to limit the duty upon a railroad to maintain crossings or to limit the pertinent provision of the Railroad Act. In fact, the Illinois Commerce Commission issued a rule affirming a railroad's duty where such duty is established "by statute, order of the Commission, or in any lawful manner." Rule No. 206. Therefore, at the time plaintiff's Instruction No. 10 was given, that portion of section 8 of the Railroad Act was still in effect.

As additional support of the proposition that the Public Utilities Act did not repeal section 8 of the Railroad Act, one need only note that subsequent cases have either made reference to or applied section 8. City of Chicago v. Sanitary Dist. of Chicago, 404 Ill 315, 89 NE2d 35; Langston v. Chicago & N. W. Ry. Co., 330 Ill App 260, 70 NE2d 852; Carr v. Chicago & N. W. Ry. Co., 333 Ill App 567, 77 NE2d 857.

The trial court found and the defendant next argues that the word "safe" as used in the instruction had been judicially construed to mean "reasonably safe" and that this modification was not reflected in the instruction. It is true that the word "safe" has been judicially construed to mean "reasonably safe." Elgin, J. & E. Ry.

Co. v. Raymond, 148 Ill 241, 35 NE 729; Illinois Cent. R. Co. v. Stewart, 230 Ill 204, 82 NE 590; Waterbury v. Chicago, M. & St. P. R. Co., 207 Ill App 375.

■■ Generally, as enunciated in Deming v. City of Chicago, 321 Ill 341, 151 NE 886, "(w)here an instruction is given in the language of a statute which is pertinent to the issues it must be regarded as sufficient. Laying down the law in the words of the law itself ought not to be pronounced error." 321 Ill at 345. Greene v. L. Fish Furniture Co., 272 Ill 148, 111 NE 725; Reese v. Buhle, 16 Ill App2d 13, 147 NE2d 431. However, it has been recognized that "where the courts of review have placed a modified construction upon a statute an instruction given in the language of the statute should be framed according to that construction so as properly to inform the jury of its legal effect." De Legge v. Karlsen, 17 Ill App2d 69, 149 NE2d 491, at 78. This holding finds support in Burns v. Jackson, 224 Ill App 519; Moran v. Gatz, 327 Ill App 480, 64 NE2d 564; Walker v. Shea-Matson Trucking Co., 344 Ill App 466, 101 NE2d 449.

None of the cases cited, however, deal with the interpretation of the word "safe." There are two cases, however, arriving at different conclusions on this very question. Corlett v. Illinois Cent. R. Co., 241 Ill App 124; Waterbury v. Chicago, M. & St. P. R. Co., supra. In the Corlett case, the Second District Appellate Court found that the use of the word "safe" in an instruction was not error. The same statute was quoted in the instruction—section 8 of the Railroad Act. The court held that "(a)n instruction in the language of the statute is good, if it is applicable to the facts in the case."

In the Waterbury case, however, the First District Appellate Court reversed a judgment for the plaintiff, holding at 380, 381 that:

> While numerous authorities uphold the practice of giving instructions containing the very language

of a statute, yet we think that where a modified construction has already been placed thereon by our Supreme Court, as in the case at bar, the instruction should be framed accordingly, otherwise it would be apt to mislead the jury. In such a situation, *the better practice* is to instruct the jury as to the legal effect of the statute. (Emphasis supplied.)

It should be noted that the court in that case did not actually state that the giving of the instruction would constitute reversible error. In fact, the court found numerous errors in that (1) Instructions 33 and 34 should have been given; (2) Instructions 35–40 should have been given; and (3) the trial court erroneously determined that section 8 of the Railroad Act imposed the duty of an insurer upon the railroad.

The error in the present case, if any, would have occurred if the jury had been misled by the use of the word "safe." The trial court determined and the defendant argues that "the effect of the use of the word 'safe' in said rule and instructions was to make defendant an insurer, and this placed a greater duty on the defendant than the law requires."

 In Funk v. Babbitt, 156 Ill 408, 41 NE 166, at 415, 416, the Supreme Court held that:

The office of an instruction is to give knowledge and information to the jury, for the immediate application to the subject matter before them. The test, then, is, not what the ingenuity of counsel can, at leisure, work out the instructions to mean, but how and in what sense, under the evidence before them and the circumstances of the trial, would ordinary men and jurors understand the instructions.

This decision finds support in Reivitz v. Chicago Rapid Transit Co., 327 Ill 207, 158 NE 380. In other words, the test whether the effect of a particular instruction

136

was to make the defendant an insurer must be what the jurors, being ordinary men and women, would understand that instruction to mean under the evidence and circumstances of the trial. Applying that test to the present case, how could men of ordinary understanding believe that the use of the word "safe" in the rule and in the instructions would create an absolute duty on the defendant when neither counsel nor the trial judge, men skilled in the interpretation of language, indicated that the instructions or rule would be so understood by the jury? Nor did counsel for the defendant quarrel with the word "safe" in his post-trial motion.

 Then too, we must consider the total effect of all the instructions. As indicated in Walker v. Shea-Matson Trucking Co., 344 Ill App 466, 101 NE2d 449, "our courts recognize the 'harmless error' doctrine which disregards error in some isolated instruction when others in the series may explain it and render it harmless." Another clear expression of this doctrine is found in Sphatt v. Tulley, 38 Ill App2d 229, 186 NE2d 670, at 236, where the court emphasized that:

> As stated in Kavanaugh v. Washburn, 320 Ill App 250, and reiterated in the recent case of Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311: "Modern tendency favors a liberal application of the harmless error doctrine to instructions when it appears the rights of the complaining party have in no way been prejudiced." We also observed in Jepsen v. Sprout & Davis, 330 Ill App 448, that the trend of judicial opinion reveals a reluctance to reverse cases on the ground of technical errors in instructions; hence, courts have reiterated that the instructions will be considered as a whole, and where the jury has not been misled, and the complaining party's rights have not been prejudiced by minor irregularities, such errors will not be deemed grounds for reversal.

137

 Therefore, a review of all the instructions would be proper in determining whether the effect of Instructions 10 and 11 was to make the defendant an insurer. The jury was first told in plaintiff's Instruction 1 that "you must consider these instructions as a whole, not picking out one instruction and disregarding others." In plaintiff's Instruction 4 the jury was told that "(i)t was the duty of the defendant, before and at the time of the occurrence, to use ordinary care for the safety of the plaintiff and of the decedent." Plaintiff's Instructions 5 and 6 referred specifically to the nature of ordinary care. Finally, the last sentence of the plaintiff's Instruction No. 10, the instruction found to have been erroneous, provides that the jury may consider the statute cited "together with all the other facts and circumstances and evidence in determining whether the defendant was negligent before or at the time of the occurrence." It should also be noted at this time that the plaintiff's Instruction No. 11 contained only the allegations of both the plaintiff and the defendant. Any reference to the word "safe" would have related only to what the plaintiff had originally alleged in her complaint.

 According to the test announced in the Funk case, the use of the word "safe," without a reference to the judicial modifications was not error. Assuming, however, that there were error, it would have been cured by the other instructions. The defendant argues that the instructions in effect directed a verdict and that any errors contained therein could not be cured by other instructions, citing Tuttle v. Checker Taxi Co., 274 Ill App 525. The court in that case found that an instruction which had incorporated a part of an ordinance not in force at the time of the accident, which in effect told the jury that if the plaintiff did not yield the right-of-way to the defendant's cab she could not recover, which did not tell the jury under what circumstances the automobile had the right-of-way, and which ignored the rule

138

that the violation of an ordinance is only prima facie evidence of negligence had in fact "directed a verdict, and errors it contains are not cured by other instructions." This same finding cannot be made, however, in the present case; for, the use of the word "safe" did not create the same or even a similar erroneous impression upon the jury.

The court also found and the defendant argues that the court in effect directed a verdict against the defendant by submitting Instructions 10 and 11 and by admitting Rule No. 206 because the jury was told that the defendant had the duty to maintain the area within the entire right-of-way, whereas the term "approaches" as used in the instructions and in the Rule had been judicially delimited. In addition, the court stated that, if the only negligence charged was the failure to maintain the area within the entire right-of-way, "this court would have granted a directed verdict." We do not agree.

It has been established law in Illinois for many years that a railroad has a statutory duty to maintain its crossings and the approaches thereto in a reasonably safe condition. Ill Rev Stats c 114, § 62 (1874). However, the extent to which the duty attaches depends upon the circumstances surrounding a particular case. Under some circumstances, the duty may extend over the entire right-of-way; under others, the duty may be less. The determination is essentially factual and usually should be submitted to a jury.

The court was correct in stating that the term "approaches" as used in section 8 of the Railroad Act has been judicially modified. In City of Bloomington v. Illinois Cent. R. Co., 154 Ill 539, 39 NE 478, our Supreme Court held at 547 that:

> What would be regarded as the approaches to the crossing would largely depend upon the demands of the traveling public, upon the action of the local authorities, and upon what would be reasonable

under the circumstances and local situation in each case. It is manifest that they do not and should not, in all cases, include all that part of the right of way that is covered by the street or highway and is not immediately at the crossing.

But, as pointed out in Chicago North Shore & M. R. Co. v. Commerce Commission ex rel. Dept. of Public Works & Buildings, 354 Ill 58, 188 NE 177, at 75, 76:

The fact that the State has undertaken the construction of the roads included in its State-wide system of hard-surfaced roads does not relieve the railroad companies in the State of the performance of the duty of keeping the highway crossings of their roads, and the approaches thereto, within their respective rights-of-way, safe as to persons and property.

 These judicial modifications were not reflected in Instructions 10 and 11. However, the effect of this omission was not the directing of the verdict for the plaintiff. For, the meaning of the term "approaches" was adequately clarified, at the suggestion of the trial court, in defendant's Instruction 15, which provided that:

(T)he crossing and the approaches thereto which the defendant is required to construct and maintain may but does not necessarily coincide with the limits of the defendant's acquired easement of right of way.

In determining the width and extent of the crossing and the approaches thereto you may take into consideration the demands of the traveling public, the action of the city of Belleville and upon what would be reasonable under the circumstances and local situation in this case and in considering such factors you may consider:

140

The original construction of the street.

The control and maintenance of the street.

The distance from the rails at right angles out into the street over which the defendant has asserted control by way of maintenance, repairs or surfacing.

 In this case, the jury could have found, from a consideration of all the evidence, that the defendant had a duty to maintain the entire area within its right-of-way. There was evidence that the road was graded down to the crossing, that the road was very slippery, that ice and snow had been accumulated for at least a week prior to the accident, that the plaintiff's view was obstructed by houses, a garage, and a hill, that the accident occurred at night, that the defendant did nothing at all to make the crossing reasonably safe, that the city had not taken any precautions, and that the plaintiff was driving very slowly. Similarly, the jury could have found that the defendant owed a duty to maintain only a part of the area within the right-of-way. The question is essentially factual and was properly submitted to the jury.

 It should also be noted that a railroad could fulfill its duty to maintain its crossings and the approaches thereto in a reasonably safe condition in a number of ways. A jury could find that the placing of appropriately worded signs, the cindering or salting of the area, or the removal of ice or snow would be reasonable care under particular circumstances.

 In other words, it was for the jury to determine both the extent of the area which the defendant had the duty to maintain and the type of conduct which would constitute reasonable care under the circumstances. Contrary to the opinion of the trial court, if the only negligence charged was the failure to maintain the area

within the entire right-of-way, a directed verdict should not have been granted; but rather the case should have been submitted to the jury, since there was sufficient evidence to support such a finding.

The defendant also argues that it was error to give Instructions 10 and 11 because they were repetitious, citing Ryan v. Monson, 33 Ill App2d 406, 179 NE2d 449, and Williams v. Walsh, 341 Ill App 543, 95 NE2d 743. A review of some cases would be helpful.

In Thompson v. Hughes, 286 Ill 128, 121 NE 387, the court held that "three instructions to the same effect should not have been given, but they were correct as a matter of law." The judgment in that case was affirmed, implying that any error was harmless. In Sankey v. Interstate Dispatch, Inc., 339 Ill App 420, 90 NE2d 265, the court held that six instructions on contributory negligence did not give undue emphasis to the defense of contributory negligence. In Sphatt v. Tulley, supra, the repetition of the term "defendants negligently and carelessly" six times was held not to be error, much less reversible. In Jepsen v. Sprout & Davis, supra, the court found that the repetition of almost identical instructions was held to be error, but that the error was not reversible under the "harmless error" doctrine. In Ryan v. Monson, supra, many errors, more substantial than the giving of two instructions based on a statute and an ordinance using practically the same language, were found.

 In the present case, the defendant argues that the giving of Instructions 10 and 11 after the allowance into evidence of Rule No. 206 in effect erroneously reiterated to the jury three times a single principle of law. Yet the cases upon which it relies deal only with the repetition of instructions to the jury. Hence, the allowance into evidence of Rule No. 206 did not constitute error under a theory of repetition. Also, the reference to "safe" in Instruction 11, as was mentioned earlier,

was merely a statement of the plaintiff's allegations. This repetition is not sufficient to constitute error; and, even if it is, the "harmless error" doctrine would apply.

 Finally, the defendant argues that a duty must be placed upon a railroad by statute, by order of the Commission, or in any lawful manner before the requirements concerning the maintenance of crossings which are contained in Rule No. 206 become applicable. Since, he argues, section 8 of the Railroad Act was no longer in effect at the time of the occurrence, the admission into evidence of Rule No. 206 was error in that the rule was not applicable to the case; its provisions had not been made effective since there was no duty created by statute, order, or in any lawful manner. This argument cannot prevail because it has been shown that the applicable part of section 8 of the Railroad Act had not been repealed. There was a statute in force at the time of the occurrence which imposed the duty to maintain crossings. Hence, Rule No. 206 was applicable and, therefore, admissible.

For the foregoing reasons, the order of the Circuit Court setting aside the verdict and ordering a new trial is reversed and the cause is remanded to the Circuit Court of Madison County with directions to enter judgment on the verdict of the jury.

Reversed and remanded with directions.

GOLDENHERSH and EBERSPACHER, JJ., concur.